WILLIAM M. BULLIVANT *vs.* THE FIRST NATIONAL BANK OF BOSTON & others.

Suffolk. May 21, 1923. — September 22, 1923.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice*, Dismissal without prejudice, Master. *Equity Jurisdiction*, To relieve from fraud. *Corporation*. *Trust*, Voting trust.

In this Commonwealth, it is a condition of the exercise of a right of a plaintiff in a suit in equity to have his bill dismissed at certain stages of the proceedings, that he shall be obliged to pay costs. Per RUGG, C.J.

In a suit in equity in the Supreme Judicial Court relating to the affairs of a Massachusetts corporation, which had been referred to a master, the court ordered that the master proceed with the hearings on July 31. As a result of negotiations between the plaintiff and third parties, a receiver of the corporation was appointed in other proceedings and then the plaintiff on July 27 filed a motion that his bill be dismissed without prejudice. The master refused to stay the hearing on July 31 and the plaintiff was compelled to go forward. On August 1, the court denied the motion for leave to dismiss, ruling "that the plaintiff had not the right as matter of law to dismiss his bill without prejudice, since hearings had been begun before the master." *Held*, that,

(1) Before the plaintiff could have a right to discontinue without prejudice within three days of the date set for hearings before the master, it was necessary for him to procure a modification of the order directing that the master proceed on the date set;

(2) Without that modification of the order, the master was obliged to proceed with the hearing;

(3) In the circumstances, after the hearings before the master had begun, it was proper to deny the motion of the plaintiff for dismissal of the bill without prejudice.

The owners of a majority of the voting shares of a corporation which was in financial difficulties transferred their shares to a national bank, which was one of the creditors of the corporation, under a voting trust agreement, whose provisions gave to the bank as trustee "full management and control of the deposited shares, with the full and irrevocable right to vote said shares, and exercise as to the same any rights which an owner might exercise consistently with and subject to the terms hereof, the object being that the management and control pending this agreement shall be impartial and disinterested," and empowered the bank to "consult with and take the advice of" three persons named providing that it "shall always be fully justified and protected in any course of action which it may pursue or take in accordance with the written advice of said three persons or a majority thereof." The affairs of the corporation becoming worse and its debts becoming in excess of its assets, so that its stock was of little, if any, value, a plan of reorganization, which had been fully discussed with the beneficiaries under the voting trust, was put forward in good faith and in an honest belief that the course proposed was for the best interests of all concerned. The plan, which could not become operative until approved by eighty per cent of the preferred and sixty-six and two thirds per cent of the common stockholders, involved a reducing by all the creditors of their claims by twenty-five per cent, the organization of a new corporation to take over the assets of the corporation and the payment of its obligations by securities of the new corporation, showed no unfairness on its face and none when read in the light of the financial difficulties of the corporation, did not involve fiduciaries as promoters, and under it the bank did not become a purchaser of any of the property to which it held title as trustee. *Held*, that the bank was warranted under the terms of the voting trust in exercising the powers thereby conferred to cast the vote of the shares held by it for the adoption of the plan in the light of all the attendant conditions and that such a course of action would not as a matter of law involve breach of its fiduciary duty.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 27, 1922, by an owner of shares in Northwestern Leather Company, a Massachusetts corporation, against The First National Bank of Boston, to whom the plaintiff and another had conveyed their shares under the terms of a voting trust described in the opinion, and six individuals, to enjoin the defendants from bringing either voluntary or involuntary proceedings to have the Northwestern Leather Company adjudged a bankrupt or to have a receiver thereof appointed, to enjoin The First National Bank of Boston from casting at a meeting of the stockholders of Northwestern Leather Company called to be held on June 30, 1922, or at any adjournment thereof, votes represented by the stock held by it under the voting trust in favor of the reorganization plan described in the opinion or any other plan to sell or transfer all the property of the Northwestern Leather Company either to itself or to any one else, and to enjoin two of the individual defendants from voting proxies obtained by them or either of them at that stockholders' meeting or any adjournment thereof.

A stipulation filed by the parties, a decree relating to hearings before a master, the circumstances relating to a motion by the plaintiff to have the suit dismissed without prejudice and without costs and its denial, and findings in the report of the master and an exception by the plaintiff thereto are described in the opinion. The suit came on to be heard before *Braley,* J., on the master's report and the plaintiff's exception thereto and for a final decree, and he, being of the opinion that the exception should be overruled, that the master's report should be confirmed, and that a final decree should be entered dismissing the bill with costs, at the request of the plaintiff reported the suit for determination by the full court.

The case was submitted on briefs in May, 1923, before *Rugg,* C.J., *Crosby, Pierce,* and *Carroll,* JJ., and afterwards was submitted on briefs to all the Justices except *DeCourcy,* J.

*G. L. Mayberry & J. M. Hallowell,* for the plaintiff.

*E. F. McClennen,* for the defendants Spalding, Murdock, Pope, Mosher and Wood.

*E. E. Blodgett,* for the defendants The First National Bank of Boston and Dwinnell.

RUGG, C.J.  This is a suit in equity.  The bill alleges that the plaintiff is the owner of a large number of shares of the common and preferred stock in the Northwestern Leather Company (hereafter called the corporation).  The corporation is alleged to be possessed of property of great value, which the defendants or some of them, through fraud and conspiracy set forth at length in the bill, are attempting to secure for themselves by the form of a sale without adequate payment.  The prayers are for temporary and permanent injunctions against the institution of proceedings for bankruptcy or for receivership, against voting on shares held by a voting trust or by proxy at a stockholders' meeting for a proposed sale of the property of the corporation, and for other relief.  The bill was filed in the Supreme Judicial Court for Suffolk County on June 27, 1922.  Notice was issued returnable June 29, 1922, and on that date the case came on for hearing on the prayer for preliminary injunction.  On June 29, 1922, a stipulation to the effect that the defendants would not institute proceedings in bankruptcy or for receivership, and would not vote shares held under the voting trust or on proxies until the case was heard on its merits, in lieu of injunction, was entered into by the parties and filed of record.  The pleadings were completed and on July 18, 1922, a master was appointed to hear the parties and make report of the facts.  On July 25, 1922, it was ordered by the court that the hearing before the master proceed on Monday, July 31, 1922.  On July 27, 1922, as a result of negotiations between the plaintiff and banks other than the defendant bank, creditors of the corporation, a receiver of the corporation was appointed by the Superior Court in another proceeding.  Under these circumstances the plaintiff, on Thursday, July 27, 1922, being four days before the day fixed by order of the court for the hearing before the master, filed a motion, entitled " Plaintiff's motion that the bill be dismissed without prejudice."  That motion sets out at length the stipulation entered into in lieu of hearing on prayer for temporary injunction, and the

proceedings in the Superior Court resulting in the appointment of a receiver of the corporation. These were apparently adduced by the pleader as grounds for the action sought by the motion. After recitals of such historical matter covering more than a printed page of the record, the motion concludes with these words: " Wherefore the plaintiff moves that the bill of complaint be dismissed without prejudice and without costs and that the stipulation now in force be at the same time discharged, and the defendants relieved from their obligation thereof." That motion having been thus filed during the summer season, it could not by any possibility under the general order of the court concerning the conduct of its business be brought to the attention of the court for a hearing in ordinary course at a regular sitting until Tuesday, August 1, the day after Monday, July 31, on which by the special order of the court the master was to begin hearing the case on its merits.

The master refused, in the absence of any order to that effect from the court, to stop his hearing on Monday, July 31, and compelled the parties to go forward. The plaintiff's motion was brought to the attention of the single justice on Tuesday, August 1, who " ruled that the plaintiff had not the right as matter of law to dismiss his bill without prejudice, since hearings had been begun before the master." The exception to that ruling is the first matter to be determined.

The right of a plaintiff in equity to dismiss his bill has been considered in several of our decisions. In *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District,* 171 Mass. 450, it was said at page 452: " The general rule seems to be that the court, on the plaintiff's motion, will dismiss his bill on payment of costs as for want of prosecution, unless something has been done in the case which entitles the defendant, on equitable grounds, to have the suit finally disposed of on the merits." Numerous cases are there cited where the right of the plaintiff to have his bill dismissed before hearing is stated to be " upon payment of the costs." *Kempton* v. *Burgess,* 136 Mass. 192. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 164 Mass. 222, 224.

*Chicago & Alton Railroad* v. *Union Rolling Mill Co.* 109 U. S. 702, 713. *Saylor's Appeal,* 39 Penn. St. 495.

In all our subsequent cases reference to the absolute right of a plaintiff in equity to dismiss his bill is coupled with the statement that it is a right " on paying costs " or on " payment of costs." *Kyle* v. *Reynolds,* 211 Mass. 110, 111. *Lumiansky* v. *Tessier,* 213 Mass. 182, 190. *Keown* v. *Keown,* 231 Mass. 404, 407.

This question was not before the court in *Weston* v. *Railroad Commissioners,* 205 Mass. 94, but arguendo it was said at page 97, " It is true that costs are allowed upon a nonsuit at law, and may be decreed when a bill in equity is dismissed without prejudice . . . ."

In *Whitten* v. *Whitten,* 5 Cush. 42, the court rather curtly denied a motion by the plaintiff to be allowed to discontinue without costs.

The result of our own decisions is indubitable that the " right " of the plaintiff in equity to dismiss his bill is indissolubly joined with the obligation to pay costs. It is a condition of the exercise of the right that that obligation be performed.

Decisions in other jurisdictions are in accord with the rule established by our own cases. In *Carrington* v. *Holly,* Dickens, 280, it was said by Lord Hardwicke that a plaintiff before issue tried may " apply to dismiss his bill, upon payment of costs." In *Cummins* v. *Bennett,* 8 Paige, 79, at page 81, it was said by Chancellor Walworth, " It is a matter of course, to permit a complainant to dismiss his bill at any time, before an interlocutory or final decree has been made in the cause, upon payment of costs. . . . But the complainant cannot discontinue his suit in any case, except upon a special order of the court, after due notice . . . to the adverse party . . . unless it be upon the terms of paying the costs which have accrued therein. . . . And the suit is not absolutely out of court . . . until he has paid, or at least tendered or offered to pay, the costs to the adverse party." The opinion in *Detroit* v. *Detroit City Railway,* 55 Fed. Rep. 569, was written by the present Chief Justice of the United States while sitting as member of the

Circuit Court of Appeals. It contains an elaborate dis cussion and holds that " It is very clear from an examination of the authorities, English and American, that the right of a complainant to dismiss his bill without prejudice, on pay- ment of costs, was of course except in certain cases. *Chicago & A. R. Co.* v. *Union Rolling Mill Co.* 109 U. S. 702, 3 Sup. Ct. Rep. 594." The exceptions are not relevant to the facts here disclosed. *Bank* v. *Rose*, 1 Rich. Eq. 292, 294. *Booth* v. *Leycester*, 1 Keen, 247. *Electrical Accumulator Co.* v. *Brush Electric Co.* 44.Fed. Rep. 602. *Hat-Sweat Manuf. Co.* v. *Waring*, 46 Fed. Rep. 87. *Western Union Telegraph Co.* v. *American Bell Telephone Co.* 50 Fed. Rep. 662, 664. See for collection of cases to the same general point, 21 C. J. 630, 631, § 798; 15 C. J. 68, 69, 70, §§ 118, 119; Ann. Cas. 1917, 1185, note, and Whitehouse Eq. Pract. § 323.

In Dan. Ch. Pract. (6th Am. ed.) 791, it is said, " After appearance, and before decree, the plaintiff may, generally, obtain an order to dismiss the bill, but only upon payment of costs," unless the adversary parties consent that it be without costs and where " there has been any proceeding in the cause which has given the defendant a right against the plaintiff, the plaintiff cannot dismiss his bill as of course." It further is said at the same page: " It seems, formerly, to have been considered, that the Court had no power to make an order, on the application of the plaintiff, dismissing the bill without costs, except upon the defendant's consent actually given in Court. It has now, however, been de- cided, that the Court has power to make such an order in a proper case, and such orders have been made: where the defendant surrendered a lease, to obtain an assignment of which the bill was filed, and absconded; where the bill was filed under a mistake, under which both plaintiffs and de- fendants were at the time, where the defendants had assigned their interests to codefendants, after the bill was filed, and had joined in an answer with such other defendants and disclaimed; where the suit was rendered nugatory by the subsequent passing of an Act of Parliament, or by the re- versal of a case on the authority of which the bill was filed,

or by any subsequent matter; and where the plaintiff had been misled by the act of the Court."

The cases of *Bradley* v. *Merrill*, 88 Maine, 319, and *Mason* v. *York & Cumberland Railroad*, 52 Maine, 82, are not at variance. There seems to us to be nothing in the decision in *McGowan* v. *Columbia River Packers' Association*, 245 U. S. 352, pertinent to the facts here disclosed. Compare *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 253, and cases collected at page 255.

The case at bar does not present any question as to the discretionary power of the court not to allow costs in equity. It presents only a claimed absolute right to discontinue without order of court.

The case had been set down for hearing before the master on a certain Monday by order of the court. The plaintiff filed his motion on the Thursday preceding that Monday. The single justice was not to hold a sitting under the general order of the court until after that Monday. It was the duty of the plaintiff to go to the single justice, or some justice of the court, and get revocation of the order of the court to the master to go forward with the hearing on Monday, before he could be in position to assert his absolute right to dismissal on payment of costs. The statute provides that the court shall be open at all times. G. L. c. 213, § 4. If the plaintiff wanted to exercise his right to discontinue on payment of costs within three days of a hearing assigned by order of court, he ought to have presented an appropriate motion to a justice of the court and secured a modification of the order to the master before he was in position to exercise that right.

The master was obliged to obey the order of the court to go forward with the hearing on Monday. That was in substance and effect a trial and affected the rights of the parties. *Worcester* v. *Lakeside Manuf. Co.* 174 Mass. 299. *Kyle* v. *Reynolds*, 211 Mass. 110.

There was no error in the ruling that, since the hearing had begun before the master, the plaintiff's motion ought to be denied in view of all the circumstances disclosed.

The exception to the master's report based on his refusal

to disregard the order of the court to proceed with the hearings on July 31, 1922, must be overruled for the reasons already stated.

There is no report of the evidence. Therefore the findings of fact made by the master must be accepted as final. The only question is, whether on those findings the plaintiff is entitled to a decree in his favor as matter of law. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330.

There are specific findings to the effect that all the defendants acted in good faith and in an honest belief that the course taken and recommended by each was for the best interests of all concerned. All allegations of the bill to the contrary are definitely found to be unsupported.

No deceit was practised upon the plaintiff or the corporation by any of the defendants. Each of the individual defendants talked freely, frankly and honestly with the plaintiff concerning the situation on numerous occasions.

The main facts upon which the plaintiff now relies are that the corporation, although highly prosperous at one time, suffered from general business depression in the leather trade and was deeply indebted to several banks, one of which was The First National Bank of Boston. Apparently a situation developed in 1921 when the corporation was unable to pay its debts if its creditors insisted upon payment in cash. In June, 1921, the plaintiff, who individually and as trustee held a large amount of both common and preferred stock in the corporation, together with one Hall, another stockholder, entered into a voting trust with The First National Bank. The plaintiff and Hall deposited with the bank more than half of the outstanding shares of the common stock, which alone had voting power, certificates of such stock being duly indorsed and stamped for transfer. The bank agreed to hold those shares and to issue therefor receipt certificates. It was provided that the agreement should remain in force three years unless sooner terminated, and that while it remained in force " the Bank, trustee, shall have full management and control of the deposited shares, with the full and irrevocable right to vote said shares, and exercise as to the same any rights which an owner might exercise con-

sistently with and subject to the terms hereof, the object being that the management and control pending this agreement shall be impartial and disinterested. . . . It is agreed that said Bank in connection with its holding, owner-ship, control, management or voting of the deposited shares, may consult with and take the advice of " three persons named and " shall always be fully justified and protected in any course of action which it may pursue or take in accordance with the written advices of said three persons or a majority thereof." The plaintiff resigned as president of the corporation at about the time of the execution of the voting trust agreement, although continuing as a director.

The business condition of the corporation did not improve. A point seems to have been reached where the debts of the corporation exceeded its assets and the stock appeared to have little if any value. A plan of reorganization was put forth approved by a majority of those named in the voting trust and by the vice-president of The First National Bank and by most of the directors of the corporation, which in-volved a scaling by all the creditors of twenty-five per cent of their claims, the organization of a new corporation to take over the assets of the corporation, and the payment of its obligations by securities of the new corporation. It is not necessary to analyze in detail the proposed plan of re-organization. There is no unfairness on its face and none when it is read in the light of the financial difficulties of the corporation as reported by the master.

It has not been and hardly could be contended that the voting trust was not binding upon the parties to it. *Bright-man* v. *Bates,* 175 Mass. 105, 111. *Thompson-Starrett Co.* v. *E. B. Ellis Granite Co.* 86 Vt. 282, 289. *Chapman* v. *Bates,* 16 Dick. 658, 667. *Boyer* v. *Nesbitt,* 227 Penn. St. 398, 404. *Bowditch* v. *Jackson Co.* 76 N. H. 351, 360. *Winsor* v. *Commonwealth Coal Co.* 63 Wash. 62, 73. *Car-negie Trust Co.* v. *Security Life Ins. Co.* 111 Va. 1, 21. *Hall* v. *Merrill Trust Co.* 106 Maine, 465. *Ecker* v. *Kentucky Refining Co.* 144 Ky. 264, 272.

It cannot be said to be beyond the terms of the voting trust for the bank to vote the shares held by it in favor of the

proposed plan of reorganization in view of all the circumstances. The bank did not cease to be a creditor of the corporation or surrender its rights as such by becoming depositary of the stock under the voting trust. While it could not use its power under that agreement for the furtherance of its own interests to the detriment of others, the record discloses no attempt of that nature. The affairs of the corporation had reached a crisis. The defendants all supported the reorganization plan in an honest belief that it was to the advantage of the corporation and of all those with a financial stake in its welfare. The plan for reorganization was to come before the stockholders for discussion and adoption. By its terms it could not become operative until approved by eighty per cent of the preferred and sixty-six and two thirds per cent of the common stockholders. The plan did not involve fiduciaries as promoters. The bank was warranted under the terms of the voting trust in exercising the powers thereby conferred to cast the vote of the shares held by it for the adoption of the plan in the light of all the attendant conditions.

That course of action would not as matter of law involve breach of its fiduciary duty.

A trustee cannot become purchaser of property title to which he holds in his capacity as trustee. *Brown* v. *Cowell*, 116 Mass. 461, 465. *Attorney General* v. *Armstrong*, 231 Mass. 196, 214. The facts reported by the master do not disclose any proposed violation of this rule.

The plaintiff is not entitled to prevail as matter of law upon the facts as reported by the master.

> *Exceptions overruled.*
>
> *Decree to be entered overruling the exception to the master's report, confirming the master's report and dismissing the bill with costs.*