ALTA E. BENNETT, trustee, *vs.* INSPECTOR OF BUILDINGS OF CAMBRIDGE.

Middlesex.    February 6, 1930. — February 25, 1930.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Zoning. Cambridge. Words,* "Special hall," "Banquet hall."

An owner of certain land in Cambridge secured from the inspector of buildings a permit to erect a building which was to be used in combination as a hotel and an apartment house, with sixty-eight hotel rooms and forty apartments, and which was to include a "banquet hall" about six thousand square feet in area below the street level, containing a small stage, a seating capacity for five hundred people and capacity for twelve hundred people at dances. The area of this hall was less than twenty-five per cent of the area of the ground floor, the largest floor. A tenth section of the zoning ordinance of

Cambridge provided that all buildings should be classified as "Residence Buildings," including hotels and boarding houses; "Public Buildings," including, as "E," "Buildings having an assembly hall or lodge rooms;" and "Business Buildings." A twelfth section of the ordinance provided that "In a residence district no building shall be erected other than a building, with its usual accessories . . . ·intended . . . exclusively for one or more of the following classes of use, as defined in § 10: . . . [then followed an enumeration of various classes of buildings, including certain 'Public Buildings,' but not 'Public Buildings E']." The ordinance further provided that "The term accessory shall not include a use of an accessory building for business not customarily incidental to the building of which it is an accessory. The term accessory use shall not include the use of an accessory building which occupies a total floor area of the largest one story of the building of which it is an accessory." The city had accepted G. L. c. 143, §§ 1–11, or corresponding provisions of earlier laws. The land upon which the building in question was to be erected was within such a residence district. Another landowner within that district brought a petition for a writ of mandamus to compel the inspector of buildings to revoke the permit. The petitioner conceded that the ordinance permitted the erection of a hotel in that district, but contended that the proposed "assembly hall" was a "special hall" and a "public building" within the meaning of G. L. c. 143, § 1, and that its erection in that district therefore would violate the zoning ordinance. A single justice ruled that the "banquet hall" properly was "permitted" as an incident to the building and ordered the petition dismissed as a matter of law. *Held*, that

(1) The "banquet hall" did not offend the provisions of the ordinance relating to accessory buildings;

(2) The definition of public buildings contained in "E" in the tenth section of the ordinance did not prevent the use of special or assembly halls as an accessory to hotels where such use was common;

(3) The proposed "banquet hall" was an accessory to the hotel and not prohibited by the twelfth section of the ordinance taken in connection with "E" in the tenth section;

(4) The ruling and order by the single justice were right.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Middlesex on February 25, 1929, and afterwards amended, described in the opinion.

The case was referred to an auditor, material findings by whom are stated in the opinion; and thereafter was heard by *Field*, J., who made certain rulings stated in the opinion and ordered the petition dismissed as a matter of law. The petitioner alleged exceptions.

Sections 10 and 12 of the Zoning Ordinance of Cambridge are in part as follows:

Section 10.   For the purposes of this ordinance all buildings shall be classified according to occupancy, as residence buildings, public buildings and business buildings.

### RESIDENCE BUILDINGS

A.   Private dwellings, two-family dwellings; club and boarding houses with less than 5 sleeping rooms above the second story and not over 2½ stories high.

B.   Multiple-dwellings.

C.   Lodging houses, dormitories, convents.

D.   Hotels, club and boarding houses other than A.

### PUBLIC BUILDINGS

A.   Hospitals, asylums, nurseries, detention buildings.

B.   Libraries, museums, court houses, city halls, fire and police stations, railroad passenger stations.

C.   Schoolhouses, college class-room buildings.

D.   Churches.

E.   Buildings having an assembly hall or lodge rooms.

F.   Theatres, moving-picture houses, opera houses, music halls.

### BUSINESS BUILDINGS

B.   Stores, restaurants.

F.   Amusement parks, armories, baseball parks, bath houses, grand stands, greenhouses, ice houses.

Section 12.   For the purpose of regulating and restricting the location of trades and industries and the location of buildings designed for specified uses, the City of Cambridge is hereby divided into three classes of use districts: Residence districts, business districts and unrestricted districts, as shown on the zone map which accompanies this ordinance and is hereby declared to be part hereof. The use districts designated on said map are hereby established. The use district resignations and map designation rules which accompany said zone map are hereby declared to be part thereof. No building, structure or premises shall be erected or used for any purpose other than a purpose permitted in the use district in which said building or premises are located.

In a residence district no building shall be erected other than a building, with its usual accessories, arranged, intended or designed exclusively for one or more of the following classes of use, as defined in Section 10: —

(1) Residence Buildings A, B, C, D.

(2) Public Buildings (A), except detention buildings, B, C, D, and buildings accessory to Public Buildings D.

(3) Business Buildings F.

(4) Garages for not more than two motor vehicles and with no space for commercial trucks.

(5) College, University or Technical School Buildings and buildings accessory to them.

(6) . . .

The term accessory shall not include a use of an accessory building for business not customarily incidental to the building of which it is an accessory. The term accessory use shall not include the use of an accessory building which occupies a total floor area of the largest one story of the building of which it is an accessory.

It appeared that the city of Cambridge had accepted G. L. c. 143, §§ 1–11, or corresponding provisions of earlier laws.

*J. Hannigan & J. E. Hannigan,* for the petitioner.

*P. J. Nelligan,* for the respondent inspector of buildings.

*J. P. Lyons,* (*J. W. Monahan* with him,) for the intervenor.

PIERCE, J. This is a petition for a writ of mandamus brought by the owner of property situated at the corner of Chauncy Street and Garden Street in the city of Cambridge, within the zoning district R–4, against John J. Terry, superintendent of buildings for the city of Cambridge, to compel him to revoke a permit granted to John J. Shine, Inc., intervenor, for the erection of a hotel at the southeast corner of Chauncy Street and Garden Street in the zoning district R–3.

The case was referred to an auditor for a finding of facts. After the auditor's report was filed, the case was heard by a single justice of this court upon the petition, the answers, and the auditor's report. The single justice found the facts

"to be as stated in the auditor's report," and at the request of the intervenor ruled: (1) "Upon all the evidence in the above entitled cause the petitioner is not entitled to a writ of mandamus as prayed for"; (2) "Upon all the evidence the intervenor was lawfully granted a permit for the erection of the building as shown upon the plans and containing a banquet hall"; (3) "The banquet hall as shown upon the plans and as constructed, was properly permitted in connection with the building, for which the superintendent of buildings granted the permit"; (4) "The permit for the building containing a banquet hall as shown on the plans was properly granted by the superintendent of buildings, and having been properly granted, cannot be revoked unless the banquet hall is used for a purpose not permitted by the zoning ordinance or building code"; (5) "There is no evidence of the banquet hall having been used for any purpose"; and (6) "The construction of the building with a banquet hall being permitted by a permit granted by the superintendent of buildings, after a written certificate had been issued by the public safety commissioner, the banquet hall is a proper incident to the building and the petitioner should not be granted the writ as prayed for." The single justice ordered that the petition be dismissed as matter of law. The case is before us on the exceptions of the petitioner to the allowance of the requests for rulings and to the order dismissing the petition. It was "agreed by all parties that the zoning ordinance with its amendments as a whole referred to in the petition may be treated as a finding of fact."

In substance, the facts found are as follows: The petitioner and intervenor are the owners respectively of the properties described in the petition. The city of Cambridge adopted a zoning ordinance in 1924 and this ordinance, except as amended from time to time, was in full force and effect as a zoning ordinance on December 13, 1928. The land of the petitioner is in residence district R–4, and the land of the intervenor is in residence district R–3. The division line between the two zones is in the street which separates the petitioner's land from that of the intervenor. The respond-

ent Terry is and was on December 14, 1928, superintendent of buildings for the city of Cambridge. The zoning ordinance was adopted "For the purpose of regulating and restricting the location of trades and industries and location of buildings designed for special uses" in the city of Cambridge. It divided "all the territory within the city into three districts, Residence, Business, and Unrestricted Districts"; and provided that all buildings shall be classified according to occupancy, as residence buildings, public buildings and business buildings; that "In a residence district no building shall be erected other than a building, with its usual accessories, arranged, intended or designed exclusively for one or more of the . . . classes of use, as defined in § 10" of the ordinance; that "The term accessory shall not include a use of an accessory building for business not customarily incidental to the building of which it is an accessory . . ."; that "Residence Buildings" are defined as follows: "A. Private dwellings, two-family dwellings; club and boarding houses with less than 5 sleeping rooms above the second story and not over 2½ stories high. B. Multiple-dwellings. C. Lodging houses, dormitories, convents. D. Hotel, club and boarding houses other than A"; that "Public Buildings" are defined as "A. Hospitals, asylums, nurseries, detention buildings. B. Libraries, museums, court houses, city halls, fire and police stations, railroad passenger stations. C. Schoolhouses, college classroom buildings. D. Churches. E. Buildings having an assembly hall or lodge rooms"; and that "Each building or part of a building shall be constructed and maintained as herein provided, according to its use . . ."

The facts found further disclose that on December 13, 1928, the intervenor filed an application and plans with the superintendent of buildings for the city of Cambridge, seeking a permit for the erection of a building to be occupied for residence on the intervenor's property at the corner of Chauncy Street and Garden Street; that the plans filed with the application showed a hall marked "banquet hall" containing six thousand square feet; that a building permit was issued on January 19, 1929, after the department of

public safety on January 15, 1929, under G. L. c. 143, had approved plans and specifications for a building to be known as Hotel Eliot, John J. Shine, Inc., owner, and designed to be used in whole or in part for hotel rooms and apartments; that the petitioner seasonably objected to the issuance of the permit, protested in writing to the superintendent, Terry, as to the issuance of the permit, requested its revocation and upon the refusal of the superintendent to revoke the permit brought this petition on February 25, 1929, which was amended December 6, 1929; that on March 15, 1929, the petitioner and the intervenor entered into a stipulation whereby the intervenor was permitted to "proceed with the construction of said building without finishing as a hall that portion of the building shown on the plan as a banquet hall . . . until a final decision has been rendered" in this court on the petition for a writ of mandamus, hereinbefore referred to.

The facts found further disclose that the building which has been erected and is occupied as an apartment house and hotel, the hall being unfinished and unoccupied under the stipulation, has a ground floor of twenty-six thousand one hundred and thirty-six square feet. Above the first floor the building is considerably smaller. Of the ground floor space ten thousand seven hundred and sixty-two square feet are unoccupied. Ramps lead from the street to the floor level of this space. The hall is less than twenty-five per cent of the area of the ground floor of the building. "The building is four stories in height, contains forty suites of three rooms each, the suite consisting of a living room with a dining alcove, a chamber, a kitchenette and a bath. In addition to the suites there are sixty-eight hotel rooms . . . . This building is neither strictly an apartment house nor a hotel, but a combination of both. The building contains a public dining room seating about eighty-six people for the use of the hotel guests or others that may desire to patronize it. The hall in controversy is below the street level and is, as laid out, one hundred and sixteen feet long, forty-eight feet wide and about eighteen feet high. It contains a small stage, about sixteen by ten. . . . The hall will seat at a

banquet, approximately five hundred people, at a meeting in which the audience is seated about one thousand and for a dance will accommodate about twelve hundred. . . . The neighborhood at one time was substantially all single residences. Within the last few years other forms of buildings have been erected in the general neighborhood and there are now a number of apartment houses and at least one building built in 1927 of a combination of apartment house and hotel, which is situated about four hundred feet from the building in question, is in the same R–3 building district, which contains the similar facilities both as to dining room and as to hall as the building in question."

On the above facts the petitioner concedes the ordinance permits the erection of a hotel upon the property of the intervenor, but contends that the hall in question, by reason of the fact that it can accommodate one thousand people at a meeting or five hundred at a banquet, gives to the building the character of a "special hall" and that the building is therefore a public building, as that term is defined in G. L. c. 143, § 1, namely, "any building or part thereof used as a public or private institution, schoolhouse, church, theatre, special hall, public hall, miscellaneous hall, place of assemblage or place of public resort." "Special hall" is defined in G. L. c. 143, § 1, as "a building or part thereof containing an assembly hall with a seating capacity of more than four hundred which may be used for occasional performances for the entertainment of spectators, with the use of scenery under such conditions as the licensing officer shall direct, and for public gatherings."

The facts found describe a building used in combination both as a hotel and as an apartment. Such a structure is a building which may be erected in a residence district, here R–3, under the provisions of section 10–D of the zoning ordinance. The "banquet hall" so called does not offend the provision of the ordinance that its use as an accessory building would occupy a total floor area of the largest one story of the building of which it is an accessory. Subdivision E of section ten of the zoning ordinance defining public buildings as "Buildings having an assembly hall or

lodge rooms; obviously is not intended to inhibit the use of special or assembly halls where such use is common in the conduct of hotels and the use complained of is, as here, an accessorial use as distinguished from the use of a building having an assembly hall or lodge room, amusement halls or exhibition buildings. We think the rulings were rightly given and that the exceptions should be overruled.

*Exceptions overruled.*