CITY OF HAVERHILL & others *vs.* JAMES G. DIBURRO.

Essex. December 6, 1957. — March 11, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Zoning. Equity Jurisdiction,* Zoning. *Equity Pleading and Practice,* Dismissal of bill, Intervention, Parties, Suit for zoning enforcement, Appeal. *Evidence,* Relevancy and materiality.

A suit in equity was not to be considered as dismissed or ripe for dismissal merely because the attorneys for the plaintiff and the defendant signed a draft of final decree dismissing the bill, where, before such a decree was entered or any motion therefor was presented or other action taken with respect thereto, a petition to intervene as a party plaintiff was allowed, the suit was recommitted to a master for hearing, which had previously been suspended, and the original plaintiff filed a withdrawal of assent to a decree dismissing the bill. [235]

In a suit in equity by a city to enforce its zoning ordinance, it was within the discretion of the trial court to allow an apparently aggrieved owner of land adjoining the defendant's land to intervene as a party plaintiff where the plaintiff city had assented to a draft of a decree, not yet entered, dismissing the bill. [235–236]

A final decree in equity whose terms in enforcing a city zoning ordinance were more favorable to the defendant than they should have been on the facts must be modified to provide the proper scope of enforcement in the public interest even though an intervening plaintiff appealing from the decree asked only that it be sustained in its original terms. [236]

Haverhill *v.* DiBurro.

In a building having a large banquet hall and kitchen on the first floor and three bedrooms which were let to tourists, the commercial renting of the banquet hall and kitchen for banquets, weddings, and other social affairs was not accessory to the tourist home operation and was not permitted under a provision of the local zoning ordinance allowing "Hotels, boarding houses, lodging houses . . . provided that a public restaurant or dining room shall be allowed only as an accessory use in such building." [236–237]

Commercial renting, solicited by advertising, of a large banquet hall and kitchen in a building for banquets, weddings, and other social affairs, constituting a "chief activity" of the building, was "a gainful service or activity usually conducted as a business" and was not permitted by a provision of the local zoning ordinance allowing "Hotels, clubs, lodges, social and community buildings, except those a chief activity of which is a gainful service or activity usually conducted as a business," irrespective of the nonbusiness nature of the functions conducted by the hirers. [237]

It would be immaterial to the enforcement of a zoning ordinance in the public interest that those seeking to enforce it were themselves violating the ordinance. [238]

After persons had been permitted, in the circumstances, to intervene as parties plaintiff in a suit in equity brought by a city to enforce its zoning ordinance, a final decree enjoining the defendant from certain violations of the ordinance should not have dismissed the bill as between the interveners and the defendant. [238]

BILL IN EQUITY, filed in the Superior Court on May 25, 1956.

A motion of Augusto D'Alessandro and Nina D'Alessandro to intervene as parties plaintiff was allowed by *O'Connell*, J. Following confirmation of a master's report, a final decree was entered by *Quirico*, J.

*Salvatore Faraci*, for the defendant.

*Walter M. Espovich*, for the interveners.

*David M. Watnick*, Assistant City Solicitor, for the plaintiff.

WHITTEMORE, J. The city of Haverhill on May 25, 1956, brought a bill in equity to enjoin the defendant from using premises at 493 South Main Street in violation of the zoning ordinance. The case was referred to a master. On July 24, 1956, Augusto and Nina D'Alessandro (hereinafter called interveners) filed a motion that they be allowed to intervene. The attorneys for the city and the defendant, on September 10, 1956, as the master found, signed a form

of final decree which recited that the bill of complaint "is hereby dismissed." No action was taken by the court in respect of this draft decree. The master reported on September 17, 1956, that hearings had been suspended, and that a judge of the Superior Court had directed that no further hearings were to be held "as appropriate decrees were being ordered by him terminating the proceedings." The master's later report states this was an oral direction. The court on September 28, 1956, allowed the motion to intervene and recommitted the case to the master for hearing. The defendant appealed from the order for intervention. The city on December 3, 1956, filed a paper stating its withdrawal of assent "to a final decree heretofore filed dismissing the bill of complaint." The master's report was filed December 14, 1956.

The case is here on the appeals of the defendant and the interveners from the final decree which, following confirmation of the master's report, enjoined certain uses of the subject premises.

The master's report finds facts as stated in this and following paragraphs. The dispute concerns the use by the defendant, for banquets, weddings and other social affairs, of a large dining room, or banquet hall as the defendant calls it, and a fully equipped kitchen on the first floor of a two and one half story structure which looks like a single family house. The defendant operates the building as a tourist home, offering three of four "bedrooms or small suites" for rental and using the fourth for the manager's home. The defendant has a "hotel or lodging house license." The zoning ordinance was amended on June 12, 1956, so as to place the entire premises at 493 South Main Street in an RA–3 district with restrictions which would exclude the contested uses unless permitted under the provision that "Any building, part of a building or land which at the time of the adoption of this ordinance, is being put to a use which does not conform . . . may be . . . continued in that use provided . . . such use was not in violation of the zoning regulation in effect at the time of the effective date of this

ordinance." Hence the defendant's rights are determined by what was lawful under the provisions of the ordinance before amendment. Prior to June 12, 1956, the house at 493 South Main Street was in two zoning districts; for a distance of seventy feet back from South Main Street it was within the restricted or "A" residential district and for the rest of its depth it was in the general or "C" residential district.

The zoning ordinance prior to June 12, 1956, provided that in the "A" district "no buildings or premises shall be used . . . for other than the following specified purposes . . . 2. Renting of rooms or the furnishing of table board in a dwelling occupied as a private residence, provided there is no display visible from the street nor sign board used to advertise such use, except for a small announcement sign. 5. Hotels, clubs, lodges, social and community buildings, except those a chief activity of which is a gainful service or activity usually conducted as a business." Uses for the "C" district prior to June 12, 1956, included "Hotels, boarding houses, lodging houses, dormitories, or apartment buildings providing there is no display or advertising visible from the street other than a small announcement sign, and provided that a public restaurant or dining room shall be allowed only as an accessory use in such building."

The defendant has used the dining room for parties of from twenty-five to one hundred people. Through newspaper advertisements he solicits its use for private parties, weddings, bridge parties, teas or other social affairs. The premises became known as "DiBurro's Manor" and a sign bearing that title was placed, conspicuously, near the sidewalk. From January, 1956, to October 17, 1956, the defendant had rented the premises for from thirty to forty parties of the kind solicited. The food served at these parties was served by P. DiBurro and Son, Inc., a corporation engaged in the catering business, and "[s]ince the defendant became the operator of DiBurro's Manor in the early part of 1956, no other person has served food in the dining room of these premises other than P. DiBurro and

Son, Inc." On occasion, organizations of a civic and social nature have rented the premises.

The interveners own the adjoining residence on South Main Street and object to the parties and "the attending noise and hilarity that customarily emanate from such gatherings."

"I do not find that the use of the dining room is an accessory use to the renting of rooms in DiBurro's Manor. I find rather that a portion of the building is in the 'A' area . . . and that the use being made of the dining room is a gainful service or activity and is conducted as a business of the defendant contrary to the provision of section 2 (a) 5. . . . The structure is not a divisible unit so that a use of one part can be considered separately from the other."

"When I resumed hearings . . . the city . . . no longer took any active part in trial . . . but all the evidence . . . was presented by counsel for the interveners . . . . I find that the city . . . was merely standing by . . . and should it result that a violation existed, the city would then be interested in enforcing the zoning regulations. As far as the present hearing is concerned, it appears to be a private controversy between the interveners and the defendant."

The master concluded that the "renting of the use of the dining room to private parties . . . for private gain is not a permissible use and is in violation of the zoning laws of the city of Haverhill."

The final decree dismissed the bill as between the interveners and the defendant and enjoined the defendant, his agents, servants, attorneys and employees from using or permitting the use of (a) the front seventy feet of the premises for "private parties, weddings, bridge parties, teas, banquets, meetings and other social gatherings and affairs a chief activity of which is a gainful service or activity usually conducted as a business," and the serving of refreshments or food thereon for any such uses; (b) the remainder of the premises for "private parties, weddings, bridge parties, teas, banquets, meetings and other social gatherings and affairs," and the serving of refreshments or food thereon

for any such uses, "except to the extent that said portion of the premises were used therefor as accessory to any hotel or lodging house which was lawfully conducted thereon on June 12, 1956."

1. There is nothing in the contention of the defendant that the case should be dealt with as though dismissed or ripe for dismissal upon and after the agreement of the city and the defendant made on September 10, 1956. A decree of court was necessary to dismiss the case. See *Bullivant* v. *First National Bank*, 246 Mass. 324, 331; *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District*, 171 Mass. 450, 452; *Kevorkian* v. *Moors*, 299 Mass. 163, 165–166. No motion for such decree having been presented prior to the allowance of the petition to intervene, the recommittal of the case to the master and the withdrawal by the city of assent to dismissal of the bill, the defendant shows no insistence on a right of dismissal while such right existed. See *Bullivant* v. *First National Bank*, 246 Mass. 324, 331. Compare *Kempton* v. *Burgess*, 136 Mass. 192.

2. The interveners have standing to appeal from the final decree. It is well established that aggrieved landowners may not maintain a suit to restrain violation of a zoning ordinance or by-law. *Old Colony Trust Co.* v. *Merchant Enterprises, Inc.* 332 Mass. 484, 488, and cases cited. But they may maintain a petition for a writ of mandamus to require the enforcing authority to act, and in such cases the persons complained of are allowed to intervene (see *Sunderland* v. *Building Inspector of North Andover*, 328 Mass. 638), or may be ordered into the case. G. L. (Ter. Ed.) c. 249, § 5, as amended. See *Colabufalo* v. *Public Buildings Commissioner of Newton*, 332 Mass. 748, *S. C.* 336 Mass. 205, 209. For violation of a court decree in such proceedings, the circumstances may be such that the aggrieved landowner can maintain a petition for contempt. *Ibid.*, 336 Mass. 205. We have said that a "person can become an intervenor only upon a showing that he has a substantial interest in the subject matter of the original litigation" (*Check* v. *Kaplan*, 280 Mass. 170, 178) and that "whether a motion

to intervene shall be allowed ordinarily rests in the sound judicial discretion of the presiding judge, and his decision will not be reversed unless it clearly appears that there has been an abuse of such discretion." *Dillaway* v. *Burton*, 256 Mass. 568, 576–577. It is questionable whether an affected landowner, merely because he is such, may be let into a suit which is pending for enforcement of the ordinance or by-law. In this case, however, when the motion was allowed on September 28, 1956, the city had shown by the agreement of September 10 that it was in the course of ending the enforcement proceedings. We think it was within the discretion of the Superior Court judge to admit into the case affected landowners who appeared to be aggrieved, had shown their interest in enforcement and, upon a dismissal, without adjudication of rights, of the city's suit, would have had a right to bring a mandamus proceeding to require enforcement. It could have been found that there was occasion to bring into the suit other parties to assure that it would be prosecuted with vigor (compare *Hallett* v. *Moore*, 282 Mass. 380, 388); it made little difference substantively whether the issues were tried in a mandamus proceeding or in equity in the pending case. See G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4, as amended by St. 1957, c. 155. Compare *Dillaway* v. *Burton*, 256 Mass. 568, 576.

3. The decree is more favorable to the defendant than is warranted by the facts found and should be modified even though the appealing interveners in their brief ask only that the injunctive relief as ordered be sustained. The enforcement of the statute is in the general public interest, and, the issue being before the court, the ordinance should be applied according to its terms.

There is no finding that the offending uses were accessory to any permitted use in fact being made of the premises. We hold as a matter of law that the operation of DiBurro's Manor as a banquet hall for private parties is not a use accessory to the operation of a three room tourist home. See *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95.

Compare *Bennett* v. *Inspector of Buildings of Cambridge,* 270 Mass. 436. It is immaterial that the defendant had a license to operate a hotel and that the use of a banquet hall may be accessory to hotel operation. The use of the rear of the premises was a violation of the "C" district provision of the zoning ordinance before the 1956 amendment. It is therefore a violation of the 1956 zoning ordinance and must be enjoined.

The propriety of the use of the front part of the defendant's premises by the defendant, prior to the 1956 amendment, must be determined by the nature of what the defendant was doing in respect of the premises. It is immaterial whether the functions for which the hall was rented by the defendant in the course of his business were functions carried on by social, charitable, civic or business groups. The renting of the hall for the use of private parties of the kind described in the decree meant that the chief activity of the defendant as the occupant was a "gainful service or activity usually conducted as a business." This use was not within the use permitted for "Hotels, clubs, lodges, social and community buildings." The question is not presented of the right of a club, lodge or social or community club or other nonbusiness organization not within the exception of clause (a) 2, 5, to occupy the premises exclusively or as a regular meeting place and to hold parties in that regular meeting place, as in a house owned by such club or lodge. We do not think that the occasional renting of the hall for a function of such an organization caused the use, for the occasion, to be the use of the building as a club, lodge or social or community building. It was, on the contrary, a use of a commercially operated banquet hall in the course of the business of operating such a hall just as much as though the renting had been to a business concern for a meeting of its salesmen. The defendant's banquet hall business so far as conducted in the "A" district violated the zoning ordinance prior to the 1956 amendment and hence violates the existing ordinance and should be enjoined. The status of the tourist home under the zoning ordinance has not been put in issue by the pleadings.

4. The defendant's objection to the exclusion of evidence which, it was contended, showed that the interveners were violating the zoning ordinance is not before us. There was no objection to the master's report in this respect and no appeal from the interlocutory decree confirming the report. *Bouchard* v. *Bouchard,* 313 Mass. 531, 535. *Lipsitt* v. *Sweeney,* 317 Mass. 706, 715. We note, however, that the evidence was not material. See *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 283. It is not necessary to discuss other action below in respect of other objections (that is, exceptions). Nothing is before us for review. *Regan* v. *Tierney,* 306 Mass. 168, 169. Rule 90 of the Superior Court (1954).

5. We see no occasion to dismiss the bill of complaint as between the interveners and the defendant. Although the decree enforces the right of the city, the interveners have been appropriate parties in the special circumstances, and should not be thrust out of the case at its close. We intend no suggestion as to their standing in respect of pressing for enforcement of the final decree.

6. The decree is reversed. Final decree is to be entered in the Superior Court enjoining the defendant from renting the premises at 493 South Main Street in the course of his business for use as a banquet hall or function room for private parties, weddings, bridge parties, teas, banquets, and other social gatherings, whether or not refreshments are served.

> *So ordered with costs of the appeals to the interveners against the defendant.*