MANUEL F. SPENCER & SON, INC. vs. COMMONWEALTH
(and two companion cases[1]).

Suffolk. March 16, 1983. — June 30, 1983.

Present: ARMSTRONG, KAPLAN, & KASS, JJ.

*Practice, Civil,* Intervention, Joinder. *Evidence,* Business record. *Public Works,* Direct payment to subcontractor, Extra work. *Res Judicata.*

In view of a lengthy trial on the merits during which all aspects of the facts relating to a subcontractor's claim for direct payment from the Commonwealth were explored, this court did not consider the contractor's contention that the subcontractor's demand under G. L. c. 30, § 39F, was insufficient for lack of a breakdown of items in the claim. [295]

There was no error in the denial of a contractor's motions to intervene in an action by a subcontractor against the Commonwealth for direct payment under G. L. c. 30, § 39F, where one motion, filed before trial, was never perfected, and where the second motion was filed after judgment; moreover, as this action was tried together with an action by the contractor against the subcontractor, in which the contractor made every material contention on its own behalf, the contractor was not in fact deprived of anything by the denial of the motions. [296-297]

At the joint trial of two actions, one by a subcontractor against the Commonwealth for direct payment and one by the contractor against the subcontractor, there was no error in the admission of abstracts from ledgers kept by the Commonwealth's assistant resident engineer which were made when the subcontractor was obliged to leave the job, but before any civil action was begun. [297]

Certain additional work by a subcontractor on a public works project, which was occasioned by the contractor's failure to lay down gravel as required by the contract, and by disruptions and relocations for which the contractor was responsible, was extra work within the meaning of G. L. c. 30, § 39F(1)(e). [297-298]

At the trial of actions arising from a public works contract the need for an "accounting" in the findings was obviated by the judge's conclusion

---

[1] Ashland Oil, Inc. *vs.* Manuel F. Spencer & Son, Inc. & another; Ashland Oil, Inc. *vs.* Commonwealth.

that the subcontractor was not liable for any of the contractor's costs in completing the subcontract work. [298]

Principles of res judicata barred an action by the contractor on a public works project against the Commonwealth for an amount the Commonwealth had paid to a subcontractor, where the issues raised by the contractor had been determined at the joint trial of an action by the subcontractor against the Commonwealth for direct payment and an action by the contractor against the subcontractor for declaratory relief. [298-299]

CIVIL ACTIONS commenced in the Superior Court Department on October 3, 1979, and June 11, 1980, respectively.

In the first action, certain pretrial motions were heard by *Young, J.* The cases were heard by *Whitman, J.*, a District Court judge sitting under statutory authority. A motion to intervene in the first case, filed after judgment, was heard by *Young, J.* A motion for a new trial of the second case was heard by *Whitman, J.*

CIVIL ACTION commenced in the Superior Court Department on May 21, 1981.

A motion for summary judgment was heard by *Morse, J.*

*Peter F. Davis* for Ashland Oil, Inc.

*Harvey B. Heafitz* (*Timothy R. Dunne* with him) for Manuel F. Spencer & Son, Inc.

*Edward J. Quinlan*, Assistant Attorney General, for the Commonwealth.

KAPLAN, J. Our main task on these appeals is to make our way through their procedural entanglements. At the end of the trail lie a few narrow substantive questions.

We begin with a bare sketch of the facts.[2] The Commonwealth contracted with Ashland Oil, Inc. (Ashland), for the reconstruction of an eleven mile stretch of Route 3 from Duxbury to Plymouth. Ashland, as general contractor, entered into two contracts, dated March 15 and June 30, 1978, with Manuel F. Spencer & Son, Inc. (Spencer), as subcontractor, by which the latter was to do certain drainage work.

---

[2] This short account is drawn from the testimony and findings in the joint trial mentioned below.

The venture required cooperation between the two companies. Spencer was to install subsurface drainage structures, then Ashland was to pave them over with a layer of gravel topped by a layer of bituminous concrete. The next step was for Spencer to dig through these layers in order to do further work connected with the drainage structures and to lay manholes, grates, and other openings at the road level. The joint effort apparently broke down in the summer of 1978. Ashland began to omit the gravel layer in favor of the concrete, which increased Spencer's burden in reaching the drainage structures and carrying out the other jobs of the second stage of its work. Further, Ashland, in order to expedite its own work, required Spencer on various occasions at considerable expense to discontinue operations and relocate. Around March, 1979, Ashland commenced withholding payments due to Spencer on the ground, apparently, that Spencer was not fulfilling its obligations, and this in turn caused Spencer to fail in its duty under the subcontracts to make payments of "health and welfare benefits contributions" to its employees' union. On April 9, 1979, Ashland cancelled the subcontracts — unjustifiably, as Spencer claimed.

Here began some procedural sorties. Spencer, under the statute providing in given situations for direct payment by awarding authorities to subcontractors (G. L. c. 30, § 39F), made demand on the Commonwealth by letter of August 28, 1979 (with copy to Ashland) for $97,343.03 as the balance owing to it in connection with the subcontracts. The demand was considered by the responsible Commonwealth department to be insufficient under the statute for lack of a breakdown of items (see § 39F[1][d]). Ashland responded by a letter of September 6, 1979, to the Commonwealth (copy to Spencer) which was considered to be insufficient for the same reason (it was also unsworn).[3] The Commonwealth did not make direct payment.[4]

---

[3] A further Ashland letter of September 18, 1979, did provide some breakdown, but it was unsworn.

[4] Nor, evidently, did the Commonwealth act under § 39F(1)(f) to make a bank deposit of the amount disputed by the general contractor.

To enforce its alleged direct-payment claim, Spencer brought suit against the Commonwealth in Superior Court on October 3, 1979 (see § 39F[4]). When the Commonwealth answered, raising among other things the inadequacy of Spencer's demand, Spencer moved for summary judgment. At this point, Ashland, a nonparty, moved in the action to be added as a party under Mass.R.Civ.P. 19(a), 365 Mass. 765 (1974) ("Persons to be Joined if Feasible"), asserting that it owed nothing to Spencer and that it might suffer prejudice if the action were carried on in its absence. The judge denied Ashland's motion, pointing to the statement in § 39F(4), as inserted by St. 1972, c. 774, § 2: "A subcontractor shall enforce a claim for direct payment . . . by a petition in equity in the superior court against the awarding authority and *the general contractor shall not be a necessary party*" (emphasis supplied).[5] He also denied without prejudice a supplementary oral motion by Ashland to intervene in the action under Mass.R.Civ.P. 24(a), 365 Mass. 769 (1974) — this on the ground that Ashland had not tendered the pleading required for intervention by Mass. R.Civ.P. 24(c), 365 Mass. 770 (1974). The judge likewise denied, without prejudice, Spencer's motion for summary judgment, mentioning the insufficiency of Spencer's demand letter.

Instead of perfecting its motion to intervene in Spencer's action, Ashland on June 11, 1980, commenced an action in Superior Court against Spencer, praying a declaration of the rights and duties of the parties. A second judge, viewing the actions of Spencer *vs.* Commonwealth and Ashland *vs.* Spencer[6] as companions, led the parties to prepare a

---

[5] We shall deal later with the quoted language, but it may be said here that Ashland's motion was unusual: usually it is a party who moves under rule 19(a) to dismiss the action unless his opponent takes steps to join some designated third person as a party. Ashland's better motion would have been to inject itself into the action as an intervenor, and it did later so move as indicated in our text immediately below.

[6] BMC Durfee Trust Co. was an added defendant (see n. 1) but this may be disregarded. A separate action by Spencer against Aetna Casualty and Surety Co., surety for Ashland, plays no part in the present appeals.

single "statement of the issues" in both actions in lieu of an elaboration of the pleadings.

The two actions were tried to a third judge sitting without a jury. Although the actions were in fact tried together rather than in sequence, no order of consolidation was entered. The Commonwealth was early excused from participating since it expressed no preference as between Spencer and Ashland. Evidence was taken for eight days. The judge made findings, rulings of law, and order for judgment in Ashland *vs.* Spencer to the effect that Ashland was not justified in terminating Spencer and was, instead, itself guilty of breaches of its duties toward Spencer in respect of both the physical performance and the withholding of payments; that Ashland was liable to Spencer in the amount of $78,252.13; and that Ashland had no claim against Spencer. Correspondingly, in Spencer *vs.* Commonwealth the judge held for Spencer against the Commonwealth in the same amount. Ashland's motion for a new trial in Ashland *vs.* Spencer was denied. It moved again (after judgment) to intervene in Spencer *vs.* Commonwealth and that motion was also denied.

Thereafter, on May 21, 1981, Ashland sued the Commonwealth in Superior Court alleging that it had substantially completed its contract; that the Commonwealth had accepted the work; and that a balance of $78,252.13 was due it, for which it prayed judgment. A motion by the Commonwealth to dismiss, reciting res judicata as a ground, was denied, but a fourth judge finally allowed summary judgment in the Commonwealth's favor on that ground (adding that Ashland had made an inadequate response to Spencer's demand).

The following matters are before us. In Spencer *vs.* Commonwealth, the Commonwealth has waived appeal, but we have a purported appeal by Ashland from the judgment for Spencer, with Ashland also claiming error in the denial of its joinder motion under rule 19(a) and its motions

to intervene under rule 24(a).[7]   In Ashland *vs.* Spencer, Ashland appeals from the judgment for Spencer and the denial of its new trial motion.[8]   In Ashland *vs.* Commonwealth, Ashland appeals from the judgment.

Ashland offers a farrago of legal arguments but they do not come to much.   It reasserts that Spencer's demand was faulty, while apparently minimizing the troubles with its own response.   The Commonwealth, having once taken the position that Spencer's demand was inadequate, now, in its brief to this court argues the contrary and criticizes Ashland's response.[9]   We are not to be taken as derogating from the importance of proper detail in demand and response under § 39F; indeed, the smooth conduct of the direct payment procedure may depend on it.   In the present circumstances, however, after a lengthy adversary trial on the merits in which all aspects of the facts have been explored, there can no longer be any reasonable protest about lack of notice of claim or defense.   There is no occasion now to read the initiating papers with eagle's eyes as if the subject-matter jurisdiction of the court depended on their technical sufficiency.[10]

---

[7] We make the questionable assumption that Ashland preserved on this record rights of appeal from the denials of the joinder and intervention motions.   Cf. *Mayflower Dev. Corp.* v. *Dennis,* 11 Mass. App. Ct. 630, 633-635 (1981).   We deal with the intervention question although Ashland does not argue it specifically; it does argue the denial of joinder. Insofar as Ashland may possibly be entitled to attack the substance of the judgment for Spencer against the Commonwealth, that is treated in effect when we consider the correctness of the judgment in Ashland *vs.* Spencer. Ashland claimed an appeal from the denial of its application for a stay of that judgment, but the appeal may be disregarded for present purposes.

[8] Ashland does not argue the new trial point and it may be disregarded. Spencer cross appealed, presumably to increase its recovery, but it has not briefed its appeal and has thus abandoned it.

[9] The Commonwealth's change of heart is understandable.   Apparently it has paid Spencer the amount of the judgment in Spencer *vs.* Commonwealth.

[10] Ashland is also hypertechnical in arguing that the trial judge's casual reference to the Commonwealth's situation as that of a "stakeholder" shows that the authority of § 39F for obtaining a judgment against the

Ashland argues that it should have been admitted as a party to Spencer *vs*. Commonwealth. It had a fair case for intervention under rule 24(a). See *Selectmen of Stockbridge* v. *Monument Inn, Inc.,* 8 Mass. App. Ct. 158, 162 (1979), and cases cited. See also *Haverhill* v. *DiBurro,* 337 Mass. 230, 235-236 (1958); Smith & Zobel, Rules Practice § 24, Reporters' Notes, at 157 (1975) (an applicant is entitled to intervene in an action when his position is comparable to that described in rule 19[a][2][i]). The language quoted from § 39F(4), that the general contractor is not a "necessary" party, may carry the meaning that the subcontractor is not required to join the general contractor as a party as a condition of maintaining an action against the awarding authority even if the general is amenable to service of process: if the general, on notice of the subcontractor's demand, is content to remain on the sidelines, the action may proceed.[11] But that is not to deny the possible propriety in given circumstances of an intervention by the general contractor, for the subcontractor's action deals with an amount due to the general under its contract with the awarding authority if the subcontractor does not have a superior claim for direct payment under the statute.[12] If Ashland had a just case for intervention, it nevertheless chose not to perfect its original motion to that end during the pendency of the

Commonwealth was exceeded in the Spencer *vs*. Commonwealth action. Also captious are criticisms about the reception of evidence at trial that may have gone somewhat beyond the bounds of the "statement of the issues" strictly considered.

[11] The statute, dating from 1972, uses the term "necessary" which is redolent of codes of procedure antedating the Federal Rules of Civil Procedure and was also used in the initial version of the Rules. The term does not appear in the present Federal Rules or in our analogous rules. "Necessary" party usually meant a person whose joinder was required if service could be effected; an "indispensable" party had to be joined in any event on pain of dismissal of the action. See Clark, Code Pleading 360-362, 380-382 (2d ed. 1947); James & Hazard, Civil Procedure § 9.14, at 427-428 (2d ed. 1977). Whether the draftsmen of the 1972 statute were conscious of these usages is not clear.

[12] Similarly we can imagine the Commonwealth seeking in some circumstances to join a general contractor under rule 19(a). See n.5.

action; and there was surely no error in denying the motion made after judgment. See *Selectmen of Stockbridge, supra.* However, all that we have said about joinder and intervention is vain, since the overriding fact is that for practical purposes Ashland was deprived of nothing by its exclusion from Spencer *vs.* Commonwealth: it made every material contention on its own behalf in the action of Ashland *vs.* Spencer which was tried in tandem, although not officially consolidated.

The latter action comprised the merits. Ashland attacks the judgment, first, on the ground that the judge received, over objections, exhibits consisting of abstracts from ledgers kept by the Commonwealth's assistant resident engineer to measure work performed on the project. The abstracts were made when Spencer was obliged to leave the job, but before any civil action was begun. There is no claim that the abstracts did not reflect truthfully the underlying entries. We think the papers offered were "made in good faith in the regular course of business and before the beginning of the civil . . . proceeding" within the meaning of G. L. c. 233, § 78, as appearing in St. 1954, c. 442. See *Bates Block Associates* v. *Milady's Shop, Inc.*, 3 Mass. App. Ct. 776 (1975). See also *Greenberg* v. *Weisman*, 345 Mass. 700, 703 (1963); *Dyecraftsmen, Inc.* v. *Feinberg*, 359 Mass. 485, 487 (1971).

Second, Ashland argues that some parts of Spencer's claim allowed by the judge did not fit the language of the statute which gives a right of direct payment for "the balance due under the subcontract including any amount due for extra labor and materials furnished to the general contractor" (§ 39F[1][e], as inserted by St. 1972, c. 774, § 2). We do not attempt a definition of "extra labor and materials" that would suit all contingencies of the statute. It is enough to say that work done by a subcontractor to achieve the goals of the subcontract that is made necessary by the general's negligence, carelessness, or wrongful act, qualifies as extra work. See 17A C.J.S., Contracts § 370(3),

at 396-398 (1963), and cases cited.[13] Spencer's exertions due to Ashland's failure to lay down gravel were clearly extra work. See *Baccari* v. *B. Perini & Sons*, 293 Mass. 297, 302-303 (1936).[14] We think the same holds for Spencer's additional work and consequent costs occasioned by the multiple disruptions and relocations for which Ashland was responsible. See *Johnson* v. *Fenestra, Inc.*, 305 F.2d 179, 181 (3d Cir. 1962). See also *J.I. Hass Co.* v. *D.M.W. Contr. Co.*, 143 N.Y. Supp. 2d 917, 920 (Sup. Ct. 1955), aff'd, 1 A.D. 2d 770 (1956).[15]

Third, Ashland points out that no "accounting," as such, appears in the findings, whereas the "statement of the issues" characterizes two of the "issues" as dealing with the "state of accounts" between Spencer and Ashland. The need for any elaborate mathematics looking like an "accounting" was obviated once it was decided that Spencer was not liable for any of Ashland's costs in doing the subcontract work remaining to be done after Spencer was wrongfully dismissed from the job. Ashland does not manage to show that the figures found by the judge to make up the amount owing to Spencer are "clearly erroneous" in the light of the evidence adduced. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

Ashland *vs.* Commonwealth was correctly decided on principles of res judicata. Even if, despite the practical fusion of the two actions tried to the judge, Ashland is conceived not to have confronted the Commonwealth therein as an adversary, we still have a situation where Ashland, as plaintiff, has failed on the critical issues as against Spencer. According to modern ideas of "issue preclusion," Ashland's

---

[13] Ashland makes a point of the fact that Spencer sometimes referred to such costs as "hardship" costs, but that characterization was entirely consistent with its claim for extra work.

[14] The judge thought Ashland overused concrete in order to increase its profit margin.

[15] There is no question here of the Commonwealth's bearing the costs for any of the extra work: the Commonwealth paid Spencer out of moneys it reserved to cover the costs of its contract with Ashland.

failure carries over and defeats it in its action against the Commonwealth with respect to a fund otherwise owing by the Commonwealth to Ashland. See Restatement (Second) of Judgments § 29 (1982), and the discussions of this principle of preclusion in *Albernaz* v. *Fall River,* 346 Mass. 336, 339-340 (1963); *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.,* 354 Mass. 448, 451-456 (1968), and dissents, *id.* at 456-461. (See also *Rudow* v. *Fogel,* 376 Mass. 587, 592-593 [1978], commenting on the *Home Owners* case.)

*Judgments affirmed.*