## HARDIN v. CLARK.

1. Where an action is instituted for breach of warranty and for subrogation, and the right to subrogation is asserted in the complaint and argued before the Circuit Judge, the failure on the part of the Circuit Judge to consider that question would be error, if this right existed independently of the right to recover on the covenant of warranty; otherwise such failure was not error, after it had been determined that plaintiff could not recover on the covenant of warranty.

2. A, the owner of a house and lot on which rested the lien of a judgment, conveyed to B with a covenant of general warranty, B agreeing to pay this judgment and reserving a sufficient amount for the purpose. B made a voluntary conveyance to C without warranty, C to D without warranty, and D to E with warranty, the judgment remaining unpaid, of all which D had notice. This lot being levied upon under this judgment and about to be sold, D paid the judgment off, and then sued upon the breach of the warranty contained in A's deed to B, and sought to be subrogated to the rights of the judgment creditor to demand payment from the estate of A, who was dead. *Held*, that before establishing a right to recover for the breach of warranty, D, claiming under B, had no right to demand from A a payment for which A had put money into B's hands; the right of subrogation, if any, was in A, and his junior judgment creditors. Nor is this right affected by a decree in favor of this judgment creditor against A's

estate, ascertaining a balance of personal assets in hand sufficient to pay this debt. What right of subrogation D would have after establishing his right to recover under the breach of warranty, not considered.

3. Neither B, nor his alienees, claiming under him, could recover damages of A for a breach of the warranty against encumbrances, when A had put into B's hands the funds with which to discharge the only encumbrance that was outstanding.

4. Where the action is for breach of warranty and for subrogation, but the latter question is never properly reached, the case would seem to be a purely legal action in which findings of fact in the court below were conclusive.

5. A purchaser is chargeable with constructive notice of an unsatisfied judgment against a former owner of the land, having a lien thereon, and therefore also of an agreement by the first vendee to pay this judgment off.

6. A finding of fact in a former action to which this plaintiff was not a party, and upon a question not then material, is not binding in this case.

7. Other grounds in support of the Circuit decree not considered, as they were not raised or decided on Circuit, nor notice given that they would be relied on here.

Before PRESSLEY, J., Richland, July, 1889.

Action by W. Holmes Hardin against W. A. Clark, administrator of C. D. Melton, deceased. The opinion states the case.

*Mr. S. P. Hamilton*, for appellant.

*Messrs. J. D. Pope* and *J. S. Muller*, contra.

April 10, 1890. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On the 25th of November, 1867, defendant's intestate, C. D. Melton, sold and conveyed, with full warranty, to his brother, G. W. Melton, certain real estate in the County of Chester, for the sum of $8,000, the purchaser giving his notes, payable in one, two, three, and four years, secured by a mortgage of the premises. On the maturity of the last one of the notes an arrangement was made between C. D. and G. W. Melton, whereby G. W. Melton assumed the payment of certain judgments against C. D. Melton, amongst which was one which,

31—32

for convenience in this discussion, will be designated as the Wright judgment, which, having been obtained before the sale to G. W. Melton, were liens on the property, and thereupon the said notes were surrendered to G. W. Melton and the mortgage cancelled. In seems that C. W. Melton satisfied all the judgments, except the Wright judgment, and on the 28th of August, 1875, conveyed the property by a voluntary deed to certain trustees for the benefit of his wife and children, and these trustees, in January, 1880, conveyed the same, without warranty, to the plaintiff herein, who, afterwards, in April, 1881, conveyed the property to one James C. Hardin with full warranty.

The estate of C. D. Melton proving to be insolvent, the defendant herein, as his administrator, some time in 1878 or 1879 commenced an action to marshal the assets, call in creditors, &c., and under this action it was adjudged, after considerable contest, that the Wright judgment was a valid judgment, and, as such, entitled to rank first in the administration of the assets (see *Clark* v. *Melton*, 19 S. C., 498), and upon a subsequent accounting in that action the master reported a balance in the hands of the administrator of something over four thousand dollars, which report was confirmed on the 20th day of April, 1885, "so far as the rights and interests of the judgment creditor, Dr. Samuel Wright's estate, is concerned."

After the validity of the Wright judgment had thus been established, the defendant herein commenced an action for the purpose of requiring the holder of the Wright judgment to enforce the same against the Chester property upon the ground, amongst other things, that as that judgment was a lien on the Chester property, while the other judgments against C. D. Melton had no such lien, the holder thereof should first be required to seek payment out of the Chester property, leaving the assets of C. D. Melton's estate to be applied to the junior judgments, under the doctrine known as the two-fund doctrine. The court, however, while fully recognizing the doctrine invoked, declined to apply it under the peculiar circumstances of that case, as it would probably involve the holder of the Wright judgment in tedious and expensive litigation, but without prejudice to any right which the parties interested might have, to be subrogated to the right

which the holder of the Wright judgment might have to enforce the same against the Chester property. See *Clark* v. *Wright*, 24 S. C., 526.

Soon after this decision was rendered, to wit, on the 13th of July, 1886, Mary B. Melton, the widow of C. D. Melton, who had previously bought up some, if not all, of the junior judgments against her husband, bought the Wright judgment, and the same having been duly assigned to her, the sheriff, under her instructions, levied on the Chester property, then in the possession of James C. Hardin, under said Wright judgment. Thereupon James C. Hardin commenced an action (to which, however, the plaintiff herein was not a party) to enjoin the sale, upon the grounds, amongst others, that the Wright judgment never was a lien on the premises, and that plaintiff was a *bona fide* purchaser without notice ; but this court held that neither of these grounds could be sustained, and hence the temporary injunction was dissolved, as we suppose.[1]

After this decision was rendered the plaintiff, before the property was sold, and, of course, before his covenantee was evicted, voluntarily paid the Wright judgment, because, as he says, he was "notified by James C. Hardin that he did not intend to pay off said encumbrance, or to purchase the property if sold, but that he looked to the plaintiff to indemnify him under his covenant of warranty to the full amount of six thousand dollars (the amount for which plaintiff had sold the property to J. C. Hardin), and the plaintiff having no defence on his covenant of warranty against the claim of the said James C. Hardin," paid up the judgment, as aforesaid, then amounting to the sum of $4,994.10. Soon after thus paying the Wright judgment, the plaintiff commenced this action, whereby he demanded judgment : 1st. For damages, by reason of the breach of the covenant of warranty contained in the deed of 25th of November, 1867, from C. D. Melton to Geo. W. Melton. 2d. That the plaintiff be subrogated to all the rights of the holder of the Wright judgment acquired by the order of 20th of April, 1885, the effect of which, it is claimed, was to adjudge that the assets of the intestate's estate, in the hands of the defendant as administrator,

[1] See 28 S. C., 38.

should first be applied to the payment of the Wright judgment. The defendant, by his answer, set up various defences, none of which need be stated, except such as were considered by the Circuit Judge.

The case was heard by his honor, Judge Pressley, who rendered his decree, finding, as matter of fact, that "All the parties had notice of the said judgment (referring to the Wright judgment) by the record thereof, and James C. Hardin had special notice thereof before they paid the purchase money. They also had notice that George W. Melton had assumed payment of the said judgment when his notes and mortgages for the purchase money of said land were surrendered to him, and that enough of the purchase money due by him had been left in his hands to pay the said judgment." He, therefore, held "that C. D. Melton, by surrender to George W. Melton of his notes and mortgage for the purchase money of said land, thereby placed in his hands funds to pay the said judgment, and thereby redeemed C. D. Melton's said covenant of warranty. I further hold that plaintiff, who had sufficient notice of said transaction, has no higher equity in said covenant of warranty than George W. Melton had. He failed to apply to said judgment the money which had been allowed him out of his own notes and mortgage. That was his own default, and plaintiff, who had notice thereof, can have no higher equity than G. W. Melton had." Accordingly judgment was rendered, dismissing the complaint without costs.

From this judgment plaintiff appeals upon the several grounds set out in the record, which make, substantially, the following questions: 1st. Whether there was error in finding, as matter of fact, that plaintiff had notice, not only of the Wright judgment, but also of the arrangement between C. D. Melton and Geo. W. Melton, whereby the latter assumed the payment of the same.

2d. Whether the fact of such notice would defeat plaintiff's right of recovery on the covenant of warranty.

3d. Whether there was error on the part of the Circuit Judge in omitting to consider the question of the right of subrogation claimed by plaintiff.

4th. Whether plaintiff was entitled to the right of subroga-

tion without regard to his right to recover on the covenant of warranty.

We propose to consider these questions in their inverse order. It will be observed that the Circuit Judge says nothing in his decree (all of which has been copied above, except the statement of facts) in regard to the claim of subrogation. This was probably for the reason that, in his opinion, there could be no right of subrogation until the claim for damages for the breach of the covenant of warranty had been established. But it is contended that appellant is entitled to the right of subrogation without regard to his right to recover on the covenant of warranty, and if this position can be maintained, then it would have been error on the part of Judge Pressley not to consider the question of subrogation, for it was expressly made in the complaint, and no doubt argued on Circuit. If, however, such position cannot be maintained, then there was no error in omitting to consider it, after it had been determined that plaintiff could not recover on the covenant of warranty.

It is very clear, from the undisputed facts of the case, that the whole amount of the purchase money of the Chester property was never paid, either to C. D. Melton in his life-time, or to his administrator since his death, but that, on the contrary, so much thereof as was necessary to pay the Wright judgment, was reserved in the hands of George W. Melton for the purpose of paying that judgment, under an express agreement to that effect between C. D. Melton, the original vendor, and Geo. W. Melton, the original vendee; and, therefore, as it seems to us, upon the plainest principles of equity and justice, the estate of C. D. Melton should not be subjected to the payment of such judgment until the fund which he had provided for the purpose had been exhausted. When Geo. W. Melton received title for the Chester property, he took it burdened with an obligation to pay that judgment, and therefore neither he nor any one claiming under him would have any equity to throw the Wright judgment on C. D. Melton or his estate, either directly or by subrogation, to the relief of the Chester property, for which C. D. Melton was never fully paid, for the very reason that enough of the purchase money was left unpaid for the express purpose of satisfying that judg-

ment therewith.    On the contrary, it would seem that if there was any equity in the matter, it would be in favor of C. D. Melton, or, his estate being insolvent, in favor of his junior judgment creditors, not simply because all of the purchase money had not been paid (for the vendor's lien is not recognized here), but because a sufficient portion of it had been left in the hands of his vendee for the express purpose of paying the Wright judgment.

While, therefore, C. D. Melton, when he conveyed the Chester property to Geo. W. Melton, no longer had any legal interest in, or lien upon, that property ; yet, as a portion of his money, to the extent of the unpaid portion of the purchase money, was still in that property, he would have an equity to require that his money thus left in the hands of the purchaser for the purpose of paying the Wright judgment should first be applied to that purpose to the relief of his other assets.    Now, whether this equity followed the land after it was conveyed to third persons, or remained only against the assets of his immediate vendee, is not a matter which we can now consider, as the proper parties for that purpose are not now before us.    Our purpose is simply to show that if there was any right of subrogation, it was in C. D. Melton, or his estate, and not in the plaintiff, or any one else.    It is true, that in the case of *Clark* v. *Wright, supra,* this court declined to require the holder of the Wright judgment to proceed against the Chester property to the relief of the estate of C. D. Melton, under the equity arising from what is called the two-fund doctrine, but this was solely on the ground—not that such equity was not recognized—but because it would involve the judgment creditor, probably, in tedious and expensive litigation, and expressly reserved any rights which the estate of C. D. Melton might have to be subrogated to the right of the holder of the Wright judgment to enforce her judgment against the Chester property.

It is urged, however, that after the Wright judgment had been adjudged valid in the case of *Clark* v. *Melton, supra,* upon an accounting by the defendant as administrator of C. D. Melton, it was ascertained that he had, or rather ought to have, in his hands a balance of over forty-five hundred dollars belonging to said estate, and that by the order of 20th of April, 1885, confirming

the report of the master, such balance was made applicable to the payment of the Wright judgment, and was a decree to that effect, to the benefit of which the plaintiff is entitled to be subrogated, by reason of his having paid this sum thus adjudged to be due by the estate of C. D. Melton. It will be observed, however, that the master in his report, which is set out in the "Case," does not recommend that such balance shall be applied to the payment of the Wright judgment, but he simply finds that amount to be the balance which should be in the hands of the administrator, and the order of confirmation, the terms of which, as set out above, are somewhat peculiar, does not in terms direct any such application. But waiving this, and assuming that this order amounted to a formal decree in favor of the holder of the Wright judgment, we do not see how this can affect the question of subrogation. It must be conceded that the holder of the Wright judgment had the legal right to enforce the same, either against the Chester property, or against the assets of C. D. Melton's estate in the hands of the administrator, as might be preferred; and when the assignee of that judgment, Mary B. Melton elected to proceed against the Chester property, we do not see how the fact that she might, if so minded, have enforced the so-called decree of 20th of April, 1885, against the estate of C. D. Melton, could affect the question of subrogation, which depends upon the equities of the parties which have already been considered.

But, again, suppose C. D. Melton had made no covenant of warranty, but relying simply upon the promise of his brother, Geo. W. Melton, to satisfy the Wright judgment, had allowed him to retain such portion of the purchase money as would be sufficient for that purpose, could it for a moment be contended that the payment of the Wright judgment by any subsequent purchaser from Geo. W. Melton, would entitle such purchaser to be subrogated to the right of the holder of the judgment to enforce payment thereof from the estate of C. D. Melton? Surely not, for the practical effect would be to require the estate of C. D. Melton to pay the amount of the judgment twice, first to his immediate alienee, and, second, to the subsequent purchaser, who had bought the property with at least constructive notice, arising from the record of the judgment, that the property

was covered by a lien, and, as matter of fact, in this case with actual knowledge of the existence of the judgment, which, however, he supposed, erroneously, as the event proved, was not a lien on the property.

It seems to us very clear that until the plaintiff has established his right to recover for the breach of warranty, his claim of subrogation cannot be sustained. Whether he could maintain such claim, even after his right to recover for the breach of the warranty has been established, is not a question presented in this case, and has not, therefore, been considered. It follows, therefore, that there was no error on the part of Judge Presslcy in not considering the question of subrogation, after he had reached the conclusion that the plaintiff could not recover for the breach of warranty; and this disposes of the third and fourth questions presented by the grounds of appeal.

As to the second question, it seems to us too plain for argument that if the plaintiff had notice of the agreement by Geo. W. Melton to pay the Wright judgment, and that a sufficient portion of the purchase money was retained in his hands for that purpose, he could not recover for the breach of the warranty occasioned by the enforcement of the Wright judgment. In such a case the plaintiff would unquestionably stand precisely in the shoes of Geo. W. Melton; and surely it could not for a moment be contended that Geo. W. Melton could recover for a breach of warranty occasioned by his own default. By the arrangement between C. D. and Geo. W. Melton, the former redeemed his covenants of warranty to the latter as effectually as if he had paid up the Wright judgment; and if the latter diverted the funds furnished him for the purpose of paying the Wright judgment from that purpose and applied them to his own use, he certainly could not take advantage of his own wrong and hold the estate of C. D. Melton liable for any loss incurred by reason of his failure to apply the funds in accordance with the agreement by which he was allowed to retain a portion of the purchase money; and one who claims under him with notice of these facts, would occupy the same position. Knowing these facts, all that a subsequent purchaser would have to do in order to protect himself, would be to require either that a sufficient portion of his purchase money

should be applied by the vendor to the extinguishment of the outstanding lien, or that he should be allowed to retain in his hands a sufficient portion of such purchase money to protect himself against such lien; and such would seem to be the plainest dictates of common prudence. It is very manifest, however, that all parties at that time acted under the mistaken belief, as the event proved, that the Wright judgment was not a lien, and they must all take the consequences of their own mistakes.

It only remains to consider the first question presented by the grounds of appeal, which is nothing but a question of fact. In the first place, it seems to us that an action to recover damages for the breach of a covenant of warranty is a law case, pure and simple, without any features of equitable cognizance whatever. If this view be correct, then it is quite certain that, in a case of that kind, this court has no jurisdiction to review any finding of fact. It may be said, however, that the case, so far as it presented a claim for subrogation, was equitable in its nature, and hence the rule above stated would not apply. But, as we have seen, the claim of subrogation depended upon the establishment of the right to recover for a breach of the warranty, which was a purely legal demand. Now, while it may be true that these two claims, one legal and the other equitable, might be properly united in the same complaint under the provisions of the Code, yet, as was held in *Adickes* v. *Lowry* (12 S. C., at page 108): "At the trial the legal and equitable issues must be distinguished and decided by the court in the exercise of its distinct functions as a court of law and a court of equity." From this it would seem to follow that this case, in so far as it sought to recover damages for the breach of warranty, must be regarded as a law case, and subject to the rules applicable to such cases; and in so far as it claimed the right of subrogation, it was an equity case, and should be governed by the rules applicable to that class of cases. Inasmuch, however, as no attention seems to have been paid to this distinction in the court below, both parties seeming to regard it as an equity case, to be tried by the court without a jury, we will not decline to consider the question in that aspect. But in equity cases the rule is well settled that a finding of fact in the court below will not be disturbed by this court, unless it is without any evidence

to support it, or is manifestly against the weight of the evidence.

It seems to us that the testimony clearly shows that the plaintiff not only had constructive notice of the Wright judgment arising from the record before he purchased, but also before he had paid any part of the credit portion of the purchase money—two-thirds—he had actual notice of the judgment, as well as of the arrangement between C. D. Melton and Geo. W. Melton for the payment thereof by the latter, which unpaid or credit portion of the purchase money would then have been sufficient to pay off the Wright judgment, and yet in the face of such knowledge he sells the property to James C. Hardin at a profit of about one thousand dollars, giving a full warranty, and arranges for the settlement of the unpaid portion of the purchase money due by him by the substitution of J. C. Hardin's notes to the trustees therefor, both he and J. C. Hardin knowing at the time that the Wright judgment was outstanding, and that Geo. W. Melton, under whom he claimed, through the trustees, who were mere volunteers, had assumed the payment of that judgment. It is very clear, from the testimony, that the plaintiff before he purchased, having, as must be assumed, constructive notice of the Wright judgment, took no pains to follow up such notice with proper inquiry, which if it had been done, he would have learned of the arrangement for the payment of the same by Geo. W. Melton, which arrangement had not been complied with by the party whose title he was buying. For he says that he did not investigate the title, but relied solely on the assurance of McLure, one of the trustees, who were his vendors, that the title was good. If he had examined the records, as prudence obviously dictated, especially when he was buying without warranty, he would have learned the true state of the facts; and he must be charged with notice of the facts which he could thus so easily have ascertained by instituting the proper inquiries, as it was his duty to do.

But in addition to this, the testimony of J. J. McLure tends to show that the plaintiff not only had constructive but actual notice of the Wright judgment before he bought; for he says that when the property was advertised for sale by the trustees, plaintiff inquired of him whether the purchaser would get a good title, when he says: "I replied that I thought that good titles

would be secured by the purchaser. I stated to him that the only cloud that I knew of on the place was the judgment of Mrs. Wright; that they had attempted to enforce that in the courts, and had failed." This was surely enough to have put the plaintiff upon inquiry, and if he chose to rely upon the opinion of one of the parties who was offering the place for sale, rather than to prosecute the inquiry thus invited, he must take the consequences. There can be no doubt that McLure, as well as all parties concerned, then honestly supposed that the Wright judgment was not a lien upon the premises, but that cannot affect the question as to whether the plaintiff had notice of its existence, as well as of such facts as the inquiry suggested by such notice properly prosecuted would develop.

It is urged, however, that in the case of *Hardin* v. *Melton*, *supra*, both the Circuit Judge and this court found as matter of fact that the plaintiff herein had no notice of the agreement between C. D. and Geo. W. Melton, before he purchased the Chester property, and hence it is argued that Judge Pressley was precluded from finding otherwise in this case. In the first place, it does not appear that the present plaintiff was a party to that action, and therefore we do not see how he can be affected by, or claim any benefit from, any finding of fact in that case. But even if he had been a party to that case, it is very clear that the question whether the present plaintiff had any notice, before he purchased, of the arrangement between C. D. and Geo. W. Melton was not a material inquiry in that case. The object of that action was to enjoin the assignee of the Wright judgment from levying on the Chester property, upon the ground that James C. Hardin, the plaintiff therein, was a purchaser for valuable consideration without notice of the judgment. If he did have notice of the judgment, as this court held he did, then the action could not be maintained, whether he had notice of the agreement between C. D. and Geo. W. Melton or not. Indeed, all that is said about it by the Circuit Judge is, that in making a statement of the facts, preparatory to a determination of the question involved, his honor, Judge Norton, says, in speaking of the sale by the trustees to the plaintiff herein, that the land was sold without warranty "to W. Holmes Hardin, who had notice of the

Wright judgment, but not of the agreement that G. W. Melton was to pay it;" and all that this court had to say upon the subject was simply by way of recital of Judge Norton's statement. It is very manifest that there was no *adjudication* of the fact that plaintiff had no notice of the agreement.

We cannot say that Judge Pressley committed any such error in his finding of fact as would justify this court, under the well settled rule, in disturbing such finding.

Counsel for respondent, in their argument here, have undertaken to sustain the judgment below upon other grounds, but it does not appear that they were either considered or decided by the Circuit Judge, and no notice having been given that they would be relied on here, as required by the proper practice, we have not felt at liberty to consider them.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.