DOROTHY M. ALBERNAZ & others *vs.* CITY OF FALL RIVER & others.

Bristol.    May 6, 1963. — July 2, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Estoppel. Public Welfare. Civil Service. Municipal Corporations,* Employees.

Where, in a suit in equity, not a class suit, against a city by some of its welfare employees under G. L. c. 31, § 47E, to enforce payment to them of certain annual step rate salary increases, there was a final decree, from which no appeal was taken, ordering the city to pay such increases to the petitioners, and subsequently other welfare employees of the city,

not parties or privies to such suit, brought a similar suit against the city, it was not estopped in the later suit by the decree in the earlier suit from relitigating the issue of such salary increases.   [339–340]

Under G. L. c. 31, § 47E, before the enactment of St. 1962, c. 579, welfare employees of a municipality in which a basic compensation plan had been established under § 47D, who had been receiving annual step rate increases in their salaries in amounts "fixed by the board" referred to in § 47D, were entitled, after an amendment to the basic plan increased the minimum and maximum salaries and provided for annual step rate increases, to the new minimum salaries or their current salaries, whichever were greater, but were not entitled to the new minimum salaries plus the step rate increases already earned by them.   [340–342]

PETITION IN EQUITY filed in the Superior Court on February 1, 1962.

The suit was heard by *Smith*, J.

*John T. Farrell, Jr.*, Assistant Corporation Counsel, for the respondents.

*H. William Radovsky* for the petitioners.

SPALDING, J.   This is a petition in equity under G. L. c. 31, § 47E, to enforce certain provisions of the civil service laws.   At least two of the petitioners are taxable inhabitants of the city of Fall River (city), and all petitioners hold permanent positions in the department of public welfare of the city.

The case was submitted on the pleadings, which in essence amounted to a case stated.   On December 11, 1951, the city accepted the provisions of G. L. c. 31, § 47E, which provides that welfare employees of cities and towns shall be paid certain step rate increases for each year of service.[1] On January 1, 1952, the Director of Civil Service, with the approval of the welfare compensation board, established a

---

[1] Section 47E at times here material read:   "'Persons holding positions referred to in section forty-seven C shall be given an annual step-rate increase, to be set forth in the compensation plan established under section forty-seven D, on the first day of July following the anniversary of the date of their receiving the minimum salary for the position which they hold, but such increase shall not entitle such persons to any change of rating or increased authority.   Such increase shall be fixed by the board referred to in section forty-seven D and shall be paid annually until the maximum salary set forth in the compensation plan established under section forty-seven D for the positions so held has been reached.   The superior court, upon suit by the attorney general or petition of one or more taxable inhabitants of a city or town in which it is alleged that the provisions of this section or sections forty-seven C and forty-seven D are not enforced, may, in law, or equity, enforce said sections.''

welfare compensation plan which provided minimum and maximum salaries for welfare employees and set forth a table of annual step rate increases in salary beginning with the prescribed minimum and continuing until the maximum salary had been reached.

Subsequent to the formulation of the basic welfare compensation plan in 1952 four amendments to the plan were adopted, taking effect in 1957, 1959, 1960, and 1961, respectively. Each amendment increased the prescribed minimum and maximum salaries to be paid to welfare employees, and provided for annual step rate increases. After each amendment to the basic plan, the city readjusted its salary scale but did not credit the workers with the step rate increases earned under the prior plans. Under this system, as we understand it, the employee received the new minimum if this amount exceeded his prior salary. If his prior salary exceeded the new minimum he continued to be paid this salary and would thereafter receive annual increases based on this amount until the new maximum was reached.

In 1959, an enforcement proceeding similar to the present was commenced by one Berube and others, and the Superior Court in its final decree ordered that after the adoption of each amendment to the compensation plan the petitioner-employees were entitled to receive the new minimum plus the step rate increases earned under the basic plan as amended. The city adjusted the salaries of the employees in accordance with that decree and the Berube litigation terminated without appeal.

This petition was brought in February of 1962, and in May of that year the court entered a decree ordering that the petitioners' salaries "be re-established by adding thereto the increments earned to date by being advanced to that median or compensation grade established by the several Amended Welfare Compensation Plans which are similar or comparable to their own . . .."

The case comes here as a result of our holding today that a petition by the city for leave to appeal late under G. L.

c. 214, § 28, as amended through St. 1960, c. 207, § 2, from the final decree was properly allowed. *Ante,* p. 333.

The petitioners argue that the decree in the Berube case allowing certain employees to benefit from the increments earned under previous compensation plans estops the city from relitigating the same issue of law in this proceeding. Even though the petitioners were not parties or privies to the prior proceeding, they urge that the doctrine set forth in *Giedrewicz* v. *Donovan,* 277 Mass. 563, should be extended to permit them to use the Berube adjudication offensively against the respondent. In the *Giedrewicz* case this court held that a determination in an earlier action, where the sole issue was negligence, that an employer was not liable because his employee was not negligent estopped the plaintiff from asserting a claim against the employee based on the latter's negligence. The rule of the *Giedrewicz* case was followed in *Silva* v. *Brown,* 319 Mass. 466, 469.

Recent decisions in other courts show a growing tendency to extend the doctrine of collateral estoppel in cases where it is sought to use a prior judgment defensively against a plaintiff. *Eisel* v. *Columbia Packing Co.* 181 F. Supp. 298 (D. Mass.), and authorities collected at page 300. The rationale of this trend has been well stated by Wyzanski, J. in the *Eisel* case, *supra:* "Instead of such wooden tests [mutuality of estoppel and technical privity], inquiries should be made as to whether plaintiff had a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time. And, many courts also believe it is appropriate to inquire whether the second defendant has such a factual relationship to the first defendant that it is equitable to plaintiff to give the second defendant the benefit of the first defendant's victory. In the case at bar there is nothing inequitable in defendant invoking the doctrine of collateral estoppel. . . . [The plaintiff] has had his day in court on the issue in a forum of his own choosing and against a party of his own choosing who was closely related to the present defendant." P. 301.

But rarely, if ever, has a court allowed a stranger to the

first action to use a judgment offensively, as distinguished from defensively, against a party who did not initiate the prior litigation. See comment, 65 Harv. L. Rev. 818, 862–865; Note, 2 Boston College Ind. & Com. L. Rev. 164; Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L. Rev. 281. Judicial reluctance in allowing strangers to so use an earlier judgment is based on principles of fairness. A decision allowing these petitioners to make use of the Berube decree offensively might result in injustice to the city. For example, the city, unaware that strangers to the proceedings would seek to use that judgment offensively in subsequent proceedings, may have foregone its right to appeal after determining that the costs and inconvenience of appeal exceeded the costs of satisfying the decree. Or there might have been other reasons, equally good, on which its failure to appeal was based.

The petitioners urge that they should have the benefit of the favorable decree in the Berube suit because they are also welfare employees of the city of Fall River. See Restatement: Judgments, § 86. Without deciding whether the petitioners would be able to benefit from the adjudication in the Berube case if that were a class suit, it is sufficient to say that it was not a class suit; the petitioners in that case did not act or purport to act as representatives of all employees similarly situated. No averment is made in this petition that the petitioners in the Berube petition alleged that "all the persons whom they profess[ed] to represent . . . [had] a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants." *Spear* v. *H. V. Greene Co.* 246 Mass. 259 at 266. Compare *Brucato* v. *Lawrence*, 338 Mass. 612, 613, where civil service employees of a department of a city alleged that the bill for declaratory relief was brought on behalf of themselves and all other employees of the department.

The petitioners concede that if the amendments to the basic plan are construed "strictly or literally, the . . . em-

ployees would not be entitled to the new minimum plus the annual step-rate increments already earned under the old minimum.'' It may be, as the petitioners suggest, that under the literal interpretation of the amendments there would be instances where junior employees would be receiving the same salaries as seniors in the same classification, and that ''many Seniors would have to work more years than the Juniors in order to reach their maximum.'' But the construction urged by the petitioners, however desirable as a matter of policy, stretches the wording of the amendments beyond permissible limits. This is not a case where a literal construction of the amendments would thwart the legislative purpose or would be absurd. See *Commissioner of Corps. & Taxn.* v. *Boston Ins. Co.* 328 Mass. 641, 646.

Practical considerations favor our construction of the amendments. A municipality, which ''must include in the budget the sums necessary to pay the permanent force of employees, or must take lawful action to reduce either the force or the wages'' (*Barnard* v. *Lynn,* 295 Mass. 144, 147), should not have to speculate as to its financial obligations to its employees. Legislative or administrative action imposing financial obligations on a city or town should be clear and precise. The construction of the amendments urged by the city does not work undue hardship on the petitioners.

Under a recent enactment the present question cannot arise.[2] Henceforth the petitioners and those similarly employed will be entitled to be paid in accordance with the

---

[2] Statute 1962, c. 579, § 2, reads: ''Each person holding any such position who prior to the effective date of this act is receiving compensation below the maximum compensation set forth in the plan shall, commencing with the effective date of this act be paid a rate which is not less than the minimum set forth in the plan plus one increment for each year of service in the position held by such person; and each such person who prior to the effective date of this act received maximum compensation in accordance with the rate established in the compensation plan shall, commencing with the effective date of this act, be paid the maximum set forth in said compensation plan for the position held by such person. Each person holding any such position who prior to the effective date of this act has been employed by any city or town in any such position for at least five years shall, commencing with the effective date of this act, be paid the maximum salary set forth in said compensation plan for the position held by such person.''

construction here urged. But the amendment by its terms operates prospectively and has no application to the plans under consideration. Section 47E prior to the 1962 amendment did not purport to regulate the step rate increases, but left those matters to be "fixed by the board" referred to in § 47D. The plans established by the board, as we have held, cannot fairly be construed to be the equivalent of the 1962 amendment.

The final decree is reversed and a new decree is to be entered dismissing the petition.

*So ordered.*