Home Owners Federal Savings & Loan Association *vs.* Northwestern Fire & Marine Insurance Company.

Suffolk.   December 5, 1967. — June 7, 1968.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Collateral Estoppel.*

One not a party or privy of a party to an action may, in a subsequent action against him by the plaintiff in the prior action, use defensively against such plaintiff the judgment in the prior action with respect to issues treated as essential and fully litigated therein and findings pertaining to such issues made therein. [455]

Where it appeared that, after damage by fire to mortgaged real estate, the mortgagee brought an action against an insurance company in which the trial judge specifically found that a fire insurance policy issued by the company covering the property and the mortgagee's interest therein was in effect on the date of the fire but that the mortgagee had not filed a notice of loss required by the policy and was not entitled to recover thereon, and the action went to judgment, and that subsequently the mortgagee brought an action against another insurance company, which had not been a party or privy of a party to the earlier action, to recover under a policy in effect on the date of the fire insuring the mortgagee against loss by reason of error or accidental omission in failing to maintain valid fire insurance on mortgaged prop-

354 Mass. 448                                            449

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

erty, contending in the later action that by reason of an inadvertent release the fire insurance policy on the damaged property was not in effect on the date of the fire, it was held that the defendant in the later action was entitled to use the finding and judgment in the earlier action defensively against the mortgagee, and that the mortgagee was estopped in the later action from introducing evidence in support of its contention therein, and was not entitled to recover therein [451, 456]; WHITTEMORE and CUTTER, JJ., dissenting; KIRK, J., dissenting.

CONTRACT. Writ in the Superior Court dated November 18, 1960.

The action was heard by *Goldberg,* J.

*Brian J. Moran* for the defendant.

*Robert M. Morrison* (*David A. Bakst* with him) for the plaintiff.

REARDON, J. In this action of contract the plaintiff, Home Owners Federal Savings & Loan Association (Bank), seeks to recover under a so called "Errors and Omissions" policy of insurance issued to it for a term of three years by the defendant Northwestern Fire & Marine Insurance Company (Northwestern). In its declaration the Bank alleges that the policy insured it against loss to its interest as a mortgagee arising by reason of error or accidental omission in the operation of its customary practice of maintaining valid insurance against the risk of fire on property in which it had a mortgage interest. A judge of the Superior Court entered a finding for the Bank in the amount of $7,301.21. Northwestern claims exceptions to certain rulings of the trial judge and to his action in denying certain requests and qualifying his allowance of others. Northwestern filed an outline bill of exceptions.

Before trial the parties filed a stipulation of certain facts from which it appears that on November 30, 1958, the Bank held a mortgage on real estate in Boston securing a note, the unpaid balance of which on that date was $11,395.22. In force from January 20, 1958, to January 20, 1961, was the "Errors and Omissions" policy issued by Northwestern. On September 12, 1958, the Bank was mortgagee in three policies of fire insurance covering the real estate written by (1) the Home Insurance Company for $5,000; (2) Underwriters at

Lloyd's (Lloyd's) for $10,000; and (3) Lloyd's for $5,000. The latter two policies contained a clause which bound the insurer on its warranty to the "same terms and conditions as and to follow the settlements of Home Ins. Company." Consonant with its declaration the Bank has argued throughout this case that these three policies were not in effect on November 30, 1958, its interest in all three having been released prior to that date. On or after October 2, 1958, the Bank was first mortgagee in a third policy written by Lloyd's, in the sum of $5,000, which ran from September 26, 1958, to September 26, 1959. On November 30, 1958, the property was heavily damaged by fire.

The trial judge made findings in which he incorporated the facts stipulated. In addition he found that through inadvertence in the Bank's insurance division on September 24, 1958, the Bank, "through its Assistant Treasurer, released its interest in the policy of the Home Insurance Company," unmindful of the possible effect of this action upon the two outstanding Lloyd's policies. Thereafter the third Lloyd's policy was written to replace the Home Insurance Company policy. Following the fire the Bank was paid $4,094.01 on this third Lloyd's policy, leaving a balance of $7,301.21 due the Bank on its mortgage. Nothing was paid the Bank on the first two Lloyd's policies. The Bank then called on the agent of Northwestern for payment to it of the balance under the "Errors and Omissions" policy. The agent informed the Bank that Northwestern's policy "does not cover this loss." The judge further found the Bank's loss was due to its error and omission and ordered payment of $7,301.21 to it.

We do not consider certain questions of the validity of the release by the Bank of its interest in the Home Insurance Company policy and its notice to Northwestern. Since it is dispositive of this case we consider only the denial of request No. 20. That request reads, "As a matter of law the plaintiff is estopped from introducing evidence that the policies of insurance on the property in question were not in full force and effect on the date of the loss."

354 Mass. 448                                              451

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

Prior to the proceedings above described, on October 24, 1962, another judge of the Superior Court, sitting without jury, made findings in three cases arising from the same fire. In one of these the Bank, in an action against the Home Insurance Company, alleged that the policy of that company was in full force and effect on November 30, 1958, as were the two accompanying policies written by Lloyd's. That judge, after making detailed and lengthy findings of fact, summarizing a mass of evidence introduced on the issue by both parties, specifically found that the Home Insurance Company policy had not been cancelled or released and was in effect on the date of the loss. Prior to that judge's findings the Bank had in fact stipulated that the Lloyd's policies were in effect on the same date. Recovery in the action was denied to the Bank, however, for failure to file that notice of its loss which the Home Insurance Company policy required. Thus, the position of the Bank in that action with reference to the binding effect of the Home Insurance Company policy was exactly the reverse of its position in this case. An examination of the docket entries in the first case indicates that it has gone to judgment. G. L. c. 235, § 1. Rule 79 of the Superior Court (1954). *Sullivan* v. *Jordan,* 310 Mass. 12, 15, and cases cited. *Higgins* v. *First Natl. Stores, Inc.* 340 Mass. 618.

In these circumstances the precise question presented to us is this: Is the Bank as the plaintiff in this action against Northwestern estopped from alleging that the fire insurance policies were not in full force and effect on the day of the fire when in a prior action against the Home Insurance Company in which it was also the plaintiff the court on that issue, which clearly was treated as essential to the case by the party to be bound and by the court, specifically found the reverse?

The view which we take of this case was early foreshadowed in *Cowley* v. *Patch,* 120 Mass. 137, which "was an action on an alleged liability of the defendant's testate and a third person jointly. The defendant was allowed the benefit of a decision in a prior action by the same plaintiff against the third person which held that the liability was not joint."

*Giedrewicz* v. *Donovan,* 277 Mass. 563, 568. The broad justification for the application of collateral estoppel with which we deal is that "since the plaintiff has had his day in court on the issue in a forum of his own choosing, litigation should come to an end." Note, 65 Harv. L. Rev. 818, 863. It has been elsewhere stated that "[i]n a sense, the plaintiff who proceeds against one adversary and loses, only to try again against another, may be guilty of the same kind of trifling with the public interest against piecemeal litigation that gives rise to the rule against splitting a cause of action." Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L. Rev. 281, 301. See *Bruszewski* v. *United States,* 181 F. 2d 419 (3d Cir.). There have been a number of full discussions of the doctrine of collateral estoppel over the years which have weighed the indefinite continuance of the concept that persons not parties or in privity with parties to an action are not affected by a judgment in that action — that where strangers are not bound by a judgment its benefit is not available to them. This has been referred to as the requirement of mutuality of estoppel. See Freeman, Judgments (5th ed.) § 428, and cases cited. However, as indicated in 65 Harv. L. Rev., *supra,* at p. 862, it has become increasingly apparent that continued devotion to the doctrine of mutuality tends to cut across the prime basis for res judicata which is that litigation be ended. "Widespread, though not universal, dissatisfaction with mutuality as a guiding principle has led to its open repudiation by some courts and commentators." James, Civil Procedure (1965), § 11.34. A series of decisions has opened the door to the exception which it seems to us should be the rule in this case.

In *Coca Cola Co.* v. *Pepsi-Cola Co.* 36 Del. 124, it was pleaded in defence that two prior cases had been pending in the Court of Chancery with a single plaintiff and two defendants, that a decree had entered dismissing the bills of complaint after hearing on the merits in the two cases, and that the issues in the case at bar were identical with the issues decided against the plaintiff in the earlier suit. The

354 Mass. 448                                              453

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

court in a thorough discussion pointed out the conflict which the case presented between two principles "of requirement of mutuality of estoppel on the one hand, and, on the other, the basic principle of *res judicata,* viz., the limitation to a party to one full and free opportunity to try the merits of his case." P. 132. Concluding its discussion, the court said, "[W]e are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by . . . [an] adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one." P. 133.

There followed in 1942 the leading case of *Bernhard* v. *Bank of America Natl. Trust & Sav. Assn.* 19 Cal. 2d 807, in which the present Chief Justice Traynor reviewed the literature on the subject, stating at page 812: "No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." The *Bernhard* case finally held that a judgment against a party in one case estops him in a second where in both he was in fact litigating the same issue.

In 1956, in the case of *Israel* v. *Wood Dolson Co. Inc.* 1 N. Y. 2d 116, Chief Judge Conway engaged in an elaborate discussion making reference to the fact "that under certain circumstances a rigid adherence to the mutuality concept would defeat the policy underlying the doctrine of *res judicata,* viz., *interest republicae ut sit finis litium.*" P. 119. James, *supra,* commenting on the case, says, "The New York rule seems to be that one not a party to the first action may use the judgment *defensively* against one who was a party to the first action and had his day in court upon the issues which the judgment decided." P. 601.

454                                         354 Mass. 448

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

Again, in the case of *Eisel* v. *Columbia Packing Co.* 181. F. Supp. 298 (D. Mass.), Judge Wyzanski treated the question "whether under the law of Massachusetts the manufacturer of an alleged defective product when sued by the ultimate consumer complaining of injuries he says were caused by that product has the benefit of a judgment . . . [previously] rendered . . . [which] determined that the customer's injuries were not caused by the product." In this decision the judge questioned the apparent adherence of the Restatement of Judgments to the doctrine of mutuality. He referred to the growing hospitality of Massachusetts to the extension of the doctrine of collateral estoppel in cases where it is sought to use a prior judgment defensively against the plaintiff, and made reference to the growing tendency to so extend it evident in the cases above referred to and certain others. See *E. I. Du Pont De Nemours & Co.* v. *Richmond Guano Co.* 297 Fed. 580 (4th Cir.); *Bruszewski* v. *United States,* 181 F. 2d 419 (3d Cir.); *Adriaanse* v. *United States,* 184 F. 2d 968 (2d Cir.). In the *Eisel* case the doctrine of collateral estoppel was applied.

We consider certain of our own cases. In *Giedrewicz* v. *Donovan,* 277 Mass. 563, reference was made to the general rule, at page 565, with cases cited, that a judgment in Massachusetts is a bar to a subsequent action "only when the parties or their privies are the same in both actions." There was, however, at page 567 allusion to the rule in other jurisdictions that estoppels need not always be mutual to be binding. The court in the *Giedrewicz* case finally concluded on the facts before it that "if it is clearly established, in the trial of an action either against the employee or against the principal for damages caused by the employee's negligent conduct, that the employee is not negligent, the judgment in the case first tried is a bar to a subsequent action by the same plaintiff for the same negligent act of the same employee." Reference was made also in the *Giedrewicz* case to *Jenkins* v. *Atlantic Coast Line R.R.* 89 S. C. 408. The *Jenkins* case discussed the application of estoppel on grounds of public policy to embrace within the estoppel of a judgment

354 Mass. 448                                            455

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

those who were not, strictly speaking, either parties or privies. The decision "rested upon the wholesome principle which allows every litigant one opportunity to try his case on the merits, but limits him, in the interest of the public, to one such opportunity. See also *Silva* v. *Brown*, 319 Mass. 466, 469. Finally, in *Albernaz* v. *Fall River*, 346 Mass. 336, this court held, in a situation where a respondent city had previously lost a case after a finding on an issue identical to that which the petitioners raised in *Albernaz*, that the city was not estopped from relitigating the issue. In this instance the petitioners attempted to use a judgment, won by other petitioners in another suit against the city, *offensively* against the city. We rejected the attempt but noted with approval the tendency of other jurisdictions to extend the doctrine of collateral estoppel in cases where parties not privy to a prior judgment seek to use it *defensively* against one who was plaintiff in the prior action. We now hold that one not a party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided.

In addition, our holding expands the applicability of the doctrine to encompass certain findings not strictly essential to the final judgment in the prior action. Cf. Restatement, Judgments, § 68. Such findings may be relied upon if it is clear that the issues underlying them were treated as essential to the prior case by the court and the party to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision. Cf. *Cambria* v. *Jeffery*, 307 Mass. 49. This limited expansion of the class of findings within the ambit of the doctrine of collateral estoppel does no violence to the policies underlying the rule of the *Cambria* case, *supra*. See James, Civil Procedure, *supra*, at p. 583. We deem this limited extension of the rule warranted in view of the strong and oft-stated public policy of limiting each litigant to one opportunity to try his case on the merits.

We do not believe that this rule will encourage unnecessary, precautionary litigation of collateral issues by plaintiffs since said plaintiffs will not be adversely bound by incidental

findings on such issues absent full litigation by them in forums of their own choosing.

We need not concern ourselves with problems of obtaining appellate review of findings not absolutely essential to a final judgment since the finding relied upon here was contended for and entirely favorable (in the case in which it was made) to the party to be bound thereby.

Having in mind the increasing application of collateral estoppel in the defensive use of prior judgments against a plaintiff, we are of opinion that the bank as plaintiff in this action is estopped from proceeding since in the prior action in which it was the plaintiff it was found after full litigation of the issue that the fire insurance policies, which the bank now contends were not effective, were in full force and effect. Request No. 20 should have been granted.

*Exceptions sustained.*
*Judgment for the defendant.*


WHITTEMORE and CUTTER, JJ. (dissenting).

1. We concur in Mr. Justice Kirk's view that the doctrine of collateral estoppel has no application to the present case. The doctrine, even between the same parties, applies only to those findings in the first litigation which were specifically made (or are necessarily implied in a general finding) and which are necessary to, or at least support, the first judgment. *Cambria* v. *Jeffery*, 307 Mass. 49, 50. Restatement: Judgments, § 68 (1) and comment (o). James, Civil Procedure, § 11.21. Moore, Federal Practice (2d ed.) §§ 0.442 [2], 0.443 [5], pp. 3855–3861, 3919–3929. Findings which were actually an alternative basis of decision in the earlier case may be within the rule. In the case before us, the finding of the trial judge in the first case (that the policy was in effect) does not seem to us to have been necessary to the ultimate decision in that case or to support it.

The usual rules governing collateral estoppel, in the long run, are likely to avoid unfairness and waste of judicial time. In most cases, as here, it is easy to ascertain the actual ground of the adjudication in a former case. Substantial

inquiry, however, may be required to discover what other issues of fact were litigated and decided otherwise than as the ground of relief.

2. We do not dispute the view of the majority that, in cases to which the doctrine of collateral estoppel is applicable, a defendant in a later action is not to be prevented from relying defensively upon a determination in a former action (in which the plaintiff in the later action was the plaintiff) merely because the defendant in the later action was not a party to the former action. To this extent, as a practical matter, the requirement of mutuality of estoppel has already been modified by this court. See *Albernaz* v. *Fall River*, 346 Mass. 336, 339–340 (where, however, collateral estoppel was not applied offensively).

KIRK, J. (dissenting). The majority state an abstract proposition of law which is sound: A party not privy to a prior judgment may, by way of collateral estoppel, use that judgment defensively against a party who was a plaintiff in the action which led to the prior judgment. The proposition, however, has no application to the case before us since the prior judgment was predicated on an issue different from the issue presented for determination in the second case. I disagree with the opinion and feel obliged to state my reasons.

1. In the first case, the trial judge found that the policy was in effect. His final decision for the Home Insurance Company, however, was directly based on his finding that the Bank had not complied with policy provisions relating to notice of loss. In the present case, the trial judge denied request No. 20. This implies that he found or ruled that the decision in the first case did not depend on whether the policies were in effect. The majority deal with the denial of request No. 20 by saying that the finding of the judge in the first case (that the policy was in effect) "was treated as essential to the case by the party [the Bank] to be bound and by the court." However that may be, it is clear that the Bank lost the first case on the basis of the judge's finding that the Bank had not complied with the provisions of the

policy relating to notice of loss. If the judge had not made the latter finding the Bank would have won the first case. The nonessential nature of the finding that the policy had not been cancelled is demonstrable: It was not the basis of the denial of relief to the Bank. It was not the basis of the granting of relief to Home Insurance Company. It was not the basis for establishing any other ultimate right of the parties to the litigation. These negative meanings of the finding that the policy had not been cancelled bring the result of the first case squarely within the rule stated by Lummus, J., in *Cambria* v. *Jeffery*, 307 Mass. 49, 50: "A fact merely found in a case becomes adjudicated *only* when it is shown to have been a basis of the relief, denial of relief, or other ultimate right established by the judgment" (emphasis supplied).

This rule, that a finding of fact which is not necessary to the earlier judgment does not bar (by the principle of collateral estoppel) subsequent litigation of the issue of fact, has long been established in this Commonwealth and is generally followed elsewhere. *Minor* v. *Walter*, 17 Mass. 236, 237. *Cambria* v. *Jeffery*, 307 Mass. 49, 50, and cases cited. *Wayland* v. *Lee*, 325 Mass. 637, 641. *Henchey* v. *Cox*, 348 Mass. 742, 746–747. *Guardianship of Leach*, 30 Cal. 2d 297, 310–311. *Venetsanos* v. *Pappas*, 21 Del. Ch. 177. *Stokes* v. *Stokes*, 155 N. Y. 581, 592. *City Bank Farmers Trust* v. *MacFadden*, 13 App. Div. 2d N. Y. 395, 401. *Hardin* v. *Clark*, 32 S. C. 480, 491. Additional cases are collected in Annotation, 133 A. L. R. 840; Restatement: Judgments, § 68; 2 Freeman, Judgments, § 697; James, Civil Procedure, § 11.21. Cf. Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 846. The decisions cited in the majority opinion dealing with collateral estoppel are wholly consistent with these authorities. It appears from each of them that *the fact or facts relied upon for the estoppel were themselves the basis of the adjudication at the earlier trial.* This essential requirement for collateral estoppel is not met, however, in the case before us.

This court has never questioned the wisdom or the prac-

354 Mass. 448                                                        459

Home Owners Federal.Sav. & Loan.Assn. *v.* Northwestern Fire & Mar. Ins. Co.

ticability of the rule stated in *Cambria* v. *Jeffery*, 307 Mass. 49, 50. On the contrary, the case has been cited and followed in recent decisions (*Henchey* v. *Cox*, 348 Mass. 742, 747), is to be found in Restatement: Judgments, § 68 Comment o, Illus. 10, and is discussed with approval in James, Civil Procedure, § 11.21. It now appears that the majority have overruled the *Cambria* case without discussion.

2. Substantial rights may be lost under the majority holding. A plaintiff confronting a situation affording different, independent and perhaps inconsistent theories of recovery involving more than one defendant, being unsure of the facts which may develop at the trial or unable to foretell with certainty the applicable law, must, nevertheless, make an election which may prove to be binding. He must decide to pursue one theory of recovery against one defendant, with the knowledge that his right of action against another defendant on another cause of action may be foreclosed by a finding incidental to the result of the first case. As the present case illustrates, he is also at the mercy of his adversary, whose tactics will change with the shifting winds of trial, as to what that incidental finding will be. The outcome of at least two of the issues in the first case was largely in the hands of the Bank's adversary, Home Insurance Company. Home pleaded noncompliance with the notice provision and had the burden of proving it. Home successfully proved noncompliance and on that basis won its judgment. Home also pleaded cancellation of the policy and had the burden of proving it. Home failed to prove cancellation but its failure did not affect the judgment. Nevertheless, under the opinion, Home's failure as defendant to prove cancellation in the first case is held now to bar the Bank as plaintiff from attempting to prove cancellation in the present action against Northwestern. Home's failure to prove cancellation may have been due to any number of reasons, including, for example, inadequate investigation, or disinclination to belabor the cancellation issue in light of the strong evidence in its favor on the notice issue. In this setting Home's failure to prove cancellation in the first case

460                                    354 Mass. 448

Home Owners Federal Sav. & Loan Assn. *v.* Northwestern Fire & Mar. Ins. Co.

should not be used to estop the Bank from proving cancellation against another defendant (Northwestern) in the second case where the burden of the issue rests with the Bank. The majority so hold, however, despite the Bank's demonstrated success in proving cancellation in the case now under review. The majority's reference to the "strong and oft-stated public policy of limiting each litigant to one opportunity to try his case on the merits," means, I must assume, one "full and fair opportunity to litigate . . . [an] issue effectively." (See Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L. Rev. 281, 308.) It is my view on this record that the Bank did *not* have that opportunity in the first case, that it did have that opportunity in the second case, but the fruits of victory in the second case have been snatched from it by the majority opinion.

3. Other relevant considerations which need not be fully developed in a dissent should nevertheless be mentioned. (a) The majority's holding precludes the Bank or any party in a similar position from ever getting appellate review of the issue of cancellation of the policy. Under our practice it could not get a review of that issue in the first case because the finding (1) was not harmful to the Bank in that case and (2) did not tend to support the ultimate finding against the Bank in that case. It is denied appellate review of that issue in the second case because the majority hold that the issue was finally determined by the incidental finding made by the judge in the first case. "Full and fair opportunity to litigate an issue effectively" is denied where there is no opportunity for review. That is the situation here. The majority dispose of this serious problem with the comment, "We need not concern ourselves with problems of obtaining appellate review of findings not absolutely essential to a final judgment since the finding relied upon here was contended for and entirely favorable (in the case in which it was made) to the party to be bound thereby." Because this comment is based solely on the assertion that the Bank did not try to prove a proposition contended for by its opponent in the first case, I do not share the majority's lack of concern with

the problem of appellate review.   (b) The majority holding will gravely affect judicial administration.   There is the very real prospect that litigants, in order to exploit or in order to avoid the consequences of the majority holding, henceforth will feel obliged to explore and fully litigate issues which heretofore they seldom have had reason or opportunity to be specially concerned with.   To safeguard a litigant's rights and fulfill his professional duty counsel may feel obliged to ask for, and judges may well be under a duty to make, findings of fact which are not decisive of the case being tried. Juries will be asked to answer special questions.   The role of the pretrial judge will change if not disappear.   Greater court congestion, longer delay and heavier expense to the parties and to the public would seem to be inevitable.

I submit that the judge was entirely right in denying request No. 20, that the exception should be overruled and that the merits of the other exceptions should be examined.